(Nos. 40497, 40582 cons.—

PHILCO CORPORATION *et al.,* Appellants, *vs.* THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed June 21, 1968.—Rehearing denied Sept. 24, 1968.*

HUGH J. DOBBS, of Springfield, and STUART DOBBS, of Carlinville, (GILLESPIE, BURKE & GILLESPIE, STANTON E. HYER, and HYER, GILL & BROWN, all of Rockford, of counsel,) for appellant Philco Corporation.

HALFPENNY, HAHN & RYAN, of Chicago, (HAROLD T. HALFPENNY, JAMES F. FLANAGAN, and MARY M. SHAW, of counsel,) for appellant Rental Equipment Company.

WILLIAM G. CLARK, Attorney General, of Springfield, (JOHN J. O'TOOLE and DONALD VEVERKA, Assistant Attorneys General, of counsel,) for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Each appellant, Philco Corporation (Philco) in No. 40497, and Rental Equipment Company, Inc., (Rental) in No. 40582, objected to Department of Revenue assessments under the Use Tax Act. (Ill. Rev. Stat. 1967, chap. 120, pars. 439.1-439.22.) The circuit court of Sangamon County affirmed the action of the Department in each case, and each appellant appealed directly to this court. Because of the similarity of the factual situations and the legal contentions of the parties in the two cases, they were consolidated for opinion.

Philco, a Pennsylvania corporation, leased a computer system to Barber-Colman Company, an Illinois corporation, for use by Barber-Colman at its plant in Rockford, Illinois. The lease was executed in Pennsylvania, and it obligated Philco to install "all components of the System at the site, make all necessary connections to power supply outlets, interconnect all components, and place the System in proper operating condition." It also required Philco to "keep the equipment in good operating condition" and "to have its maintenance personnel in attendance unless other mutually agreeable arrangements are made." Philco employs and pays two engineers who are "in residence at Barber-Colman." The lease is for an initial term of six years; and Barber-Colman is to return the computer system to Philco "in as good condition as when received, normal wear and tear excepted." Typical monthly rentals are between $20,000 and $25,000.

Philco delivered the computer system in October of 1961. The Department of Revenue assessed a use tax of $12,644.03 against Philco for use of the computer in Illinois. The tax was assessed at $3\frac{1}{2}\%$ of the cost of the materials that Philco had purchased from others and incorporated into the computer system, but with respect to which Philco had at no time paid sales or use tax. The tax was paid under protest, and Philco's claim for refund was denied.

Rental Equipment Company, Inc., is a Missouri corporation which engages in the business of renting heavy construction equipment. Rental leased certain equipment for use by lessees on construction projects in Illinois. Each lease was executed at Rental's St. Louis office, and the equipment was delivered to the lessee at Rental's yard in St. Louis. Rental reserved "the right to remove the equipment from the job at any time when, in its opinion, the equipment is in danger because of strikes or any other condition * * * [and] the privilege at all times of entering any job, building or location where the * * * property is being used for the purpose of inspection * * *." It further reserved "the privilege of removing said machinery and equipment on twenty-four hours' notice if it is being overloaded or taxed beyond its capacity or in any manner abused or neglected." The lessees were forbidden to move the equipment out of Illinois "without the written consent of the lessor." The lease also provided that "[s]hould any of the provisions * * * be violated by [the] lessee * * * the lessor, or its agents may, without notice, enter the premises occupied by [the] lessee without being a trespasser thereon and take possession of and remove said equipment with or without process of law." There is no evidence that the company or its representatives entered the State either to supervise the use of its equipment or to make repairs. As a courtesy to its lessees, Rental calls the union hall for men to operate its equipment, but these men do not go on Rental's "payroll except very rarely as a matter of emergency." This service is provided because Rental's customers think Rental "can get better men."

The Department assessed use tax in the sum of $20,-506.07 and penalties of $4,553.91 against Rental for its use of the rented equipment in Illinois. The assessment was based on the purchase price of each item of equipment used in Illinois, "reduced by an amount which represents a reasonable allowance for depreciation for the period of * * *

prior out-of-state use." (Ill. Rev. Stat. 1967, chap. 120, par. 439.3.) The Department refused to give Rental credit for Missouri sales taxes paid on equipment previously leased to Missouri residents because Rental had exercised its option under Missouri law to pass those taxes on to its customers.

Both appellants were taxed under the general Use Tax Act with respect to periods when the Leasing Use Tax Act was not in effect. (Ill. Rev. Stat. 1965, chap. 120, pars. 453.121-453.140, repealed by Act approved July 20, 1967, Laws of 1967, p. 1849, S.B. 1779.) They argue that as lessors they did not "use" their property in Illinois within the meaning of the Use Tax Act, and that the Department's assessments contravene the legislative intent that the Use Tax Act do no more than complement the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1967, chap. 120, pars. 440-53.) They also raise several constitutional objections to the Department's assessments. We turn first to a consideration of whether or not the General Assembly intended that these lessors should be subject to the tax.

The basic definition of the word "use" in the Use Tax Act when it was adopted in 1955 is the same definition that is contained in the present statute. " 'Use' means the exercise by a person of any right or power over tangible personal property incident to the ownership of that property, * * *." Ill. Rev. Stat. 1967, chap. 120, par. 439.2.

After the Use Tax Act was enacted, the Department of Revenue promulgated its Rule No. 3, which stated: "The use tax does not apply to the rental payments made by a lessee to a lessor, but the lessor (not being a reseller) is legally the user of the property and is taxable on the purchase price thereof." (Ill. Use Tax Rule 8, Aug. 1, 1957.) This construction of the statute was approved in *International Business Machines Corp.* v. *Department of Revenue*, 25 Ill.2d 503, in which we said: "A mere lessee does not exercise over the property any rights or powers inci-

dent to the ownership of the property. Thus, in the absence of a change in the statutory definition of 'use,' the lessee does not use the property in the statutory sense and is not subject to use tax." 25 Ill.2d at 510-11.

The Supreme Court of California, construing identical language, similarly held that the "statutory definition of 'use' includes that exercise of dominion [over property] which takes the form of leasing it." (*Union Oil Co.* v. *State Board of Equalization* (1963), 60 Cal.2d 441, 386 P.2d 496, 500, appeal dismissed (1964), 377 U.S. 404, 12 L. Ed. 2d 495.) The California court said: "Ownership is not a single concrete entity but a bundle of rights and privileges as well as of obligations. It finds expression through multiple methods. One such method is the lease. * * * The statutory definition recognizes that the term 'use' covers the utilization of property for profit-making purposes by means of leasing; the word use is by no means restricted to physical manipulation." 386 P.2d at 500.

In our recent decision of *Miller Brewing Co.* v. *Korshak,* 35 Ill.2d 86, appeal dismissed, 386 U.S. 684, 18 L. Ed. 2d 405, we applied the same principle in construing an identical definition of use contained in the Service Use Tax Act. (Ill. Rev. Stat. 1967, chap. 120, pars. 439.31-439.51.) We there stated that "[t]he power to allow property one owns to be used for one's benefit * * * is the 'exercise' of an 'incident of ownership' under the act." (35 Ill.2d at 93.) As one commentator has stated, "when a person buys property in one state for the purpose of leasing it and transporting it to a person in another state where a use tax law is in effect, the lessor is considered as using the property in the second state for the production of income and hence is subject to such state's use tax even though he personally makes no physical use of the property in such state." Keesling, Conflicting Conceptions of Ownership in Taxation (1956), 44 Calif. L. Rev. 866, 867.

We hold, therefore, that, as lessors of personal property

who leased their machinery for use in Illinois, both Philco and Rental used that machinery in Illinois within the meaning of section 2 of the Use Tax Act. Ill. Rev. Stat. 1967, chap. 120, par. 439.2.

Both appellants also argue that regardless of the interpretation given the term "use", the following limitation in section 3 of the Use Tax Act makes the statute inapplicable to them: "If the seller of tangible personal property for use would not be taxable under the Retailers' Occupation Tax Act despite all elements of the sale occurring in Illinois, then the tax imposed by this Act shall not apply to the use of such tangible personal property in this State." (Ill. Rev. Stat. 1967, chap. 120, par. 439.3.) Philco argues, "Since transfers of possession, that is to say leasing, in transactions in which all elements had an Illinois situs were not covered by ROTA at any pertinent time, it is clear that the lease by Philco of the computer system to Barber-Colman in Pennsylvania, even if * * * otherwise covered * *. *," was exempt under section 3.

Section 3, however, is not concerned with whether the lessor would have been taxable upon transferring possession of the property to the lessee; it is concerned with whether the person who sells the property to the lessor would have been taxable with respect to that sale. Its only purpose is to insure that the use tax do no more than complement the retailers' occupation tax by prohibiting a tax upon the use of property that would have been exempt from the retailers' occupation tax if it had been sold to the user in Illinois.

As the Department correctly points out, if Rental had purchased its equipment here, and if Philco had purchased the components for its computer in Illinois, the seller in each instance would have been taxable under the Retailers' Occupation Tax Act. This is entirely clear with respect to Rental's equipment. The sale of the component parts of the computer to Philco in Illinois would also have been a "sale

at retail," which is defined as "any transfer of the ownership of * * * tangible personal property to a purchaser, *for use or consumption and not for resale* in any form * * * for a valuable consideration." (Ill. Rev. Stat. 1965, chap. 120, par. 440.) (Emphasis added.) Sales of component parts are subject only to the following exemption: "Sales of tangible personal property, which property as an ingredient or constituent goes into and forms a part of tangible personal property *subsequently the subject of a 'sale at retail'*, are not sales at retail as defined in this Act." (Ill. Rev. Stat. 1967, chap. 120, par. 440.) (Emphasis added.) The component parts involved here were not subsequently the subject of a sale at retail but were subsequently used by Philco in Illinois. Neither appellant, therefore, can claim exemption under section 3.

Rental further argues that the legislature could not have intended that a use tax be imposed on the leasing of property for use in Illinois because such a tax is "inequitable on its face." It contends that "the presence of the machines here was both fortuitous and short-lived, * * * yet for * * . * [these] accidental visit[s] * * * the Department demands a Use Tax based not on the amount of rent received, but on the entire depreciated value of the machine; and bearing no relationship at all to the length of time the machine was in the State." Rental states, however, that it "nowhere contended that the fact that the equipment was in the state a short time only had any *legal* consequences." It "pointed out the length of time the machinery was in the State only to indicate the unfair results of a tax on the full market value, to support * * * [the] argument that this could not have been intended by the Legislature."

The tax is imposed "upon the privilege of using in this State tangible personal property purchased at retail." (*Turner* v. *Wright*, 11 Ill.2d 161, 163, appeal dismissed, 355 U.S. 65, 2 L. Ed. 2d 106.) It is a nonrecurrent tax;

once the tax is paid, the owner of the property may use it in Illinois, continuously or intermittently, without incurring a further use tax. Rental notes that during the audit period covered by the Department's assessment one piece of equipment included in the assessment had been in Illinois only nine days prior to the end of the assessment period, and none of the included equipment had been in Illinois for as long as nine months during that period. But the record shows that the Department did not include in its assessment twenty other pieces of Rental's equipment which were being used in Illinois during the audit period, but which had been leased here on prior occasions. As of the end of the audit period, at least one of these machines had already been used in Illinois a total of more than two and one-half years. The equipment that was included in Rental' assessment had been recently purchased. The history of the older equipment suggests the likelihood that the newer equipment will also be the subject of subsequent leases in Illinois. None of Rental's equipment was fortuitously in Illinois; how long and how frequently it will be used here can not be determined from this record.

In *Aero-Mayflower Transit Co.* v. *Georgia Public Service Com.* (1935), 295 U.S. 285, 79 L. Ed. 1439, which upheld a fixed annual license fee imposed upon interstate carriers for their use of the highway, the Supreme Court of the United States, speaking through Mr. Justice Cardozo stated: "One who receives a privilege without limit is not wronged by his own refusal to enjoy it as freely as he may." (295 U.S. at 289, 79 L. Ed. at 1443-44.) The following year, in *Morf* v. *Bingaman* (1936), 298 U.S. 407, 80 L. Ed. 1245, the court thus explained the theory underlying such revenue measures: "As the tax is not on the use of the highways but on the privilege of using them, without specific limitation as to mileage, the levy of a flat fee not shown to be unreasonable in amount, rather than a fee based on mileage, is not a forbidden burden on interstate

commerce." (298 U.S. at 412, 80 L. Ed. at 1249.) In *Capitol Greyhound Lines* v. *Brice* (1950), 339 U.S. 542, 94 L. Ed. 1053, *Morf* was relied upon to uphold the imposition of Maryland's highway use taxes on interstate common carriers. The taxes consisted of a mileage charge plus 2% of the fair market value of each motor vehicle used in Maryland. We relied upon the *Morf* principle in *Bode* v. *Barrett*, 412 Ill. 204, affirmed (1953), 344 U.S. 583, 97 L. Ed. 567, stating that "even when the tax is imposed upon a nonresident and wholly with respect to interstate commerce, a State may tax the full measure of the privilege granted regardless of how little the privilege is exploited." 412 Ill. at 226.

Although these decisions are concerned primarily with the constitutionality of privilege taxes under the commerce clause, they demonstrate the fallacy of Rental's argument that the Department's assessments were "inequitable on their face." Moreover, in ruling upon this contention, we think it is appropriate to consider that Rental has reserved impressive controls over its leased property, and that it is subjected to exactly the same taxation as Illinois lessors, who may also lease some of their property in Illinois for only a short period of time. As the Supreme Court of California stated in *Union Oil Co.* v. *State Board of Equalization* (1963), 60 Cal.2d 441, 386 P.2d 496, 34 Cal. Rpt. 872, appeal dismissed (1964), 377 U.S. 404, 12 L. Ed. 2d 495, the tax "protects local retailers from the discriminatory advantage which out-of-state competitors would otherwise enjoy." (386 P.2d at 508.) Under these circumstances, we cannot say the tax is "unreasonable in amount." *Morf* v. *Bingaman* (1936), 298 U.S. 407, 412, 80 L. Ed. 1245, 1249.

Philco relies on some of the same considerations to argue that "[i]f otherwise valid, the use tax imposed upon the act of Philco in leasing in Pennsylvania the computer system to Barber-Colman is a direct burden upon inter-

state commerce  *  *  *." It is now well established, however, that a State may tax the owner of property "having a situs within its limits, whether [the property is] employed in interstate commerce or not  *  *  *" (*Helson* v. *Kentucky* (1928), 279 U.S. 245, 249, 73 L. Ed. 683, 686), and whether the owner is a resident or not. (*Pullman's Palace Car Co.* v. *Pennsylvania* (1891), 141 U.S. 18, 35 L. Ed. 613.) Just as unassailable is the power of a State to levy a tax on the privilege of using such property within the State. *Henneford* v. *Silas Mason Co.* (1937), 300 U.S. 577, 81 L. Ed. 814.

Philco's assertion that "[t]he leasing of the computer system in Pennsylvania for transport to and installation and use in Illinois was interstate commerce  *  *  *" is immaterial, for the tax was not, as Philco erroneously assumes, imposed "upon the act of Philco in leasing in Pennsylvania." It was imposed on Philco's use of the computer in Illinois after Barber-Colman took possession, and Philco admits that the leasing of the computer system "ceased to be interstate when possession was taken by Barber-Colman."

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end. Things acquired or transported in interstate commerce may be subjected to a property tax, non-discriminatory in its operation, when they have become part of the common mass of property within the state of destination. *  *  *  For like reasons they may be subjected, when once they are at rest, to a non-discriminatory tax upon use or enjoyment." *Henneford* v. *Silas Mason Co.* (1937), 300 U.S. 577, 582, 81 L. Ed. 814, 818.

Both the Supreme Judicial Court of Maine, in *Commercial Leasing, Inc.* v. *Johnson* (1964), 160 Me. 32, 197 A.2d 323, and the Supreme Court of California, in *Union Oil Co.* v. *State Board of Equalization* (1963), 60 Cal.2d 441, 386 P.2d 496, 34 Cal. Rptr. 872, appeal dismissed

(1964), 377 U.S. 404, 12 L. Ed. 2d 495, have rejected commerce-clause and due-process attacks on the imposition of use taxes based on the purchase price of personal property leased for use within their respective States. Both courts relied heavily upon the United States Supreme Court's decision in *Silas Mason* to find an appropriate "taxable interval" in the intrastate use of the leased property. For some of the trucks in the *Commercial Leasing* case that interval was three weeks.

This same result was reached by the New York Court of Appeals in *Atlantic Gulf & Pacific Co.* v. *Gerosa* (1965), 16 N.Y.2d 1, 209 N.E.2d 86, 261 N.Y.S.2d 32, appeal dismissed (1966), 382 U.S. 368, 15 L. Ed. 2d 426, which upheld a New York City use tax on the fair value of dredging equipment purchased eight years earlier and brought into the city "for two small jobs lasting less than a month and a half." (209 N.E.2d at 89, 261 N.Y.S.2d at 36.) After quoting from *Southern Pacific Co.* v. *Gallagher* (1939), 306 U.S. 167, 177, 83 L. Ed. 586, 593, the observation that ' "there was a ·taxable moment when [these articles] had reached the end of their interstate transportation * * *," ' Judge Fuld stated: "Although the court was there interested in the question of a state tax upon the operations of interstate commerce, its decision points up the inconsequence of the shortness of time that a taxed article remains within the state as a factor in determining the tax's validity." (209 N.E.2d at 89, 261 N.Y.S.2d at 36-37.) *Cf. Bode* v. *Barrett*, 412 Ill. 204, affirmed (1953), 344 U.S. 583, 97 L. Ed. 567; *Morf* v. *Bingaman* (1936), 298 U.S. 407, 80 L. Ed. 1245; *Aero-Mayflower Transit Co.* v. *Georgia Public Service Com.* (1935), 295 U.S. 285, 79 L. Ed. 1439.

Philco also argues that the tax discriminates against interstate commerce because Illinois lessors are not taxable under either the Retailers' Occupation or Use Tax Acts for leases executed in Illinois. It relies upon *International Busi-*

*ness Machines Corp.* v. *Department of Revenue,* 25 Ill.2d 503. As we have already pointed out, however, in that case we emphasized that *lessees* are not taxable under the present Use Tax Act because they do not exercise a right or power of ownership over leased property.

Our construction of section 2 of the Act applies equally to resident and nonresident lessors. The use of leased property in Illinois by either incurs exactly the same tax. If an Illinois lessor purchases his equipment from an out-of-state seller, that lessor is taxable for the subsequent use of the equipment in Illinois under the identical provisions of the Use Tax Act that Philco claims discriminate against interstate commerce. If, on the other hand, the same Illinois lessor purchases his equipment from an Illinois seller, that transaction measures a tax under the Retailers' Occupation Tax Act. Each is taxed only once, upon his initial use of the property in Illinois. "[A] proper analysis must take 'the whole scheme of taxation into account.' " (*Halliburton Oil Well Cementing Co.* v. *Reily* (1963), 373 U.S. 64, 69, 10 L. Ed. 2d 202, 206. To exempt Philco or Rental from a use tax would discriminate against Illinois lessors engaged in the very same business activity, since wherever the latter make their purchases, a sales or use tax is imposed.

There is simply no basis for Philco's claim of discrimination, for like the tax upheld in *Henneford* v. *Silas Mason Co.* (1937), 300 U.S. 577, 81 L. Ed. 2d 814, "Equality is the theme that runs through all the sections of the statute. * * * No one who uses property in [the state] after buying it at retail is to be exempt from a tax upon the privilege of enjoyment except to the extent that he has paid a use or sales tax somewhere. Every one who has paid a use or sales tax anywhere, or, more accurately, in any state, is to that extent to be exempt from the payment of another tax * * *." 300 U.S. at 583-84, 81 L. Ed. at 819.

Philco also argues that the commerce clause is violated by the following statutory exclusion from the definition of

"use": "the physical incorporation of tangible personal property, as an ingredient or constituent into other tangible personal property * * * which the person incorporating such ingredient or constituent therein has undertaken at the time of such purchase to cause to be transported in Interstate Commerce to destinations outside the State of Illinois." (Ill. Rev. Stat. 1967, chap. 120, par. 439.2.) It asserts that "If this exclusion is to be valid on shipments in interstate commerce moving out of this state, it must also apply in reverse, to shipments into this state, for otherwise there would result a discriminatory burden on interstate commerce."

We find no merit in Philco's contention. As we have emphasized, both resident and nonresident lessors are taxable on property used in Illinois to the same extent and under exactly the same circumstances. In the context of a tax upon the use of property by leasing it, this exclusion prevents the taxation of lessors who manufacture a product in Illinois for lease in another State. Since approximately forty States impose a sales or use tax on leased property (*State Taxation of Interstate Commerce,* H.R. No. 565 (1965), 89th Cong., 2d Sess. 646), the exclusion minimizes the risk of multiple taxation that would otherwise burden a lessor who manufactures an item in Illinois but leases it for use elsewhere. (See generally, H.R. 565, at 647, 671.) Rather than discriminate against interstate commerce, the exclusion facilitates that commerce.

Although Rental does not argue that the tax imposes an unconstitutional burden on interstate commerce, it does contend that the exemptions that relate to property that has been used for more than three months before it is brought into Illinois violate the equal-protection clause of the constitution of the United States and the uniformity requirements of section 1 of article IX of the constitution of Illinois. Those exemptions are as follows:

"The tax imposed by this Act shall not apply to the

use, in this State, of tangible personal property which is acquired outside this State by a non-resident individual who then brings the property to this State for use here, and who shall have used the property outside this State for at least 3 months before bringing the property to this State.

"Where a business that is not operated in Illinois, but which does operate in another State, is moved to Illinois or opens up an office, plant or other business facility in Illinois, such business shall not be taxed on its use, in Illinois, of used tangible personal property which such business bought outside Illinois and used outside Illinois in the operation of such business for at least 3 months before moving such used property to Illinois for use here." Ill. Rev. Stat. 1961, chap. 120, par. 439.3.

The emphasis in these provisions is not, as Rental assumes, on the form of the business entity involved. There is no difference in the application of these provisions to the property of an individual and that of a corporation, nor is there a difference in their application to property used for individual enjoyment and that used for business purposes. The statutory emphasis is upon the fact that the property accompanies its owner and is brought to Illinois by its owner for his use here. Where the owner, whether a business or private individual, remains out of the State, the exemption does not apply.

Rental also objects to the Department's refusal to give credit for the payment of taxes by Missouri lessees on some of the equipment subsequently leased in Illinois. The statute provides: "To prevent actual or likely multistate taxation, the tax herein imposed shall not apply to * * * (c) the use, in this State, of * * * property which is acquired outside this State and caused to be brought into this State by a person who has already paid a tax in another state in respect to the sale, purchase or use of such property, to the extent of the amount of such tax so paid in such other state." (Ill. Rev. Stat. 1961, chap. 120, par. 439.3.) With

respect to many of the items of Rental's property included in the assessment, sales tax had already been paid in Missouri. No credit was allowed for these taxes because Rental had not paid them itself, but had passed them on to its lessees by way of a tax imposed on the amount of rent paid, as it was permitted to do under the Missouri statute.

Under a literal reading of the provision for credit, Rental, which had acquired the property outside this State and caused it to be brought here, was not the "person who has already paid a tax with respect to the sale, purchase or use of such property * * *." In our opinion, however, this literal reading of the exemption is not justified. The legislative purpose is to "prevent actual or likely multistate taxation." That purpose is not served by an interpretation that centers upon the identity of the person who makes the payment to the exclusion of the economic effect of the tax. Whether actual payment of the tax levied by another State is made by the buyer or the seller, or by the lessee or the lessor, is not material to the legislative purpose of avoiding multistate taxation.

We hold, therefore, that Rental is entitled to credit for taxes that have been paid elsewhere with respect to the sale or use of the equipment here involved.

The judgment in No. 40497 is affirmed. The judgment in No. 40582 is reversed, and the cause is remanded to the circuit court of Sangamon County for proceedings consistent with this opinion.

*Affirmed in part and reversed in part.*