**MODERN MERCHANDISING, INC.,
d/b/a LaBelle's, Taxpayer
and Appellant,**

v.

**DEPARTMENT OF REVENUE, State of
South Dakota, Appellee.**

No. 15257.

Supreme Court of South Dakota.

Argued Sept. 17, 1986.

Decided Dec. 10, 1986.

Gene R. Woodle, Asst. Atty. Gen. (Mark V. Meierhenry, Atty. Gen., on brief), Pierre, for appellee.

Robert B. Anderson of May, Adam, Gerdes & Thompson, Pierre, (John L. Ruppert of Kirkland & Ellis, Denver, Colo., on brief), for taxpayer and appellant.

FOSHEIM, Justice.

This is an appeal from a circuit court judgment affirming a Department of Revenue (Department) order assessing use tax

---

**9.** *See supra* note 7: *Popovich,* 412 N.E.2d at 521.

and interest against LaBelle's. We reverse.

LaBelle's is a Minnesota corporation and a subsidiary of Modern Merchandising. It retails consumer goods by mail order and through stores located in Minnesota, North Dakota, and South Dakota. Department assessed use taxes and interest against LaBelle's from April 1, 1982 through February 29, 1984, on catalogs and flyers mailed to South Dakota residents. Following a hearing, Department issued an order approving the assessment and denying LaBelle's request for a refund.

From the stipulated facts it appears companies related to LaBelle's contracted with printers located in Minnesota to print the catalogs and flyers. These printers either mailed the literature from Minnesota directly to the South Dakota residents or turned the materials over to common carriers who delivered them to post offices located in South Dakota for mailing to the South Dakota residents. LaBelle's furnished the printers with the names of those to whom the literature was to be delivered. The catalogs were delivered free of charge to the residents who were free to use or discard them as they wished. Catalogs not delivered in South Dakota were returned directly to the Minnesota printers.

The tax was levied pursuant to SDCL 10–46–2 which, in pertinent part, provides:

An excise tax is hereby imposed on the privilege of the use, storage, and consumption in this state of tangible personal property purchased on or after July 1, 1939, for use in this state at the same rate [as the state sales tax].

It is Department's position that since LaBelle's paid the printers for the catalogs and flyers and those items were mailed to the South Dakota residents as determined by LaBelle's customer list, LaBelle's exercised "right or power" over the catalogs and, therefore, "use[d] the flyers and catalogs to generate sales in South Dakota and to operate its catalog business in South Dakota within the definition of 'use' in SDCL 10–46–1(2)", which in pertinent part reads:

'Use' means and includes the exercise of right or power over tangible personal property incidental to the ownership of that property....

In reviewing a circuit court judgment entered under SDCL ch. 1–26 (Administrative Procedure and Rules), "the Supreme Court shall give the same deference to findings of fact, conclusions of law and final judgment of the circuit court as it does in other appeals from the circuit court." SDCL 1–26–37. The facts in this case are undisputed. It is only the legal significance of these facts which is questioned. LaBelle's claims the circuit court erroneously applied the use tax statutes. Whether a taxation statute imposes a tax under a given set of facts is a question of law. *Petition of Famous Brands, Inc.,* 347 N.W.2d 882 (S.D.1984); *Nash Finch Co. v. South Dakota Dept. of Rev.,* 312 N.W.2d 470 (S.D.1981); *Matter of Sales Tax or Use Tax, Etc.,* 290 N.W.2d 865 (S.D.1980); *Wisconsin Dept. of Revenue v. J.C. Penney Co.,* 108 Wis.2d 662, 323 N.W.2d 168 (1982). *See also Sales Tax Liability of Valley Queen Cheese,* 387 N.W.2d 39 (S.D.1986); *Matter of Change of Bed Category of Tieszen,* 343 N.W.2d 97 (S.D.1984). This court gives no deference to a lower court's legal conclusion. It is true some cases accord "great weight" to an agency's statutory interpretation. *See Matter of Sales Tax or Use Tax,* 290 N.W.2d at 868; *Valley Queen Cheese,* 387 N.W.2d at 40. However, this rule applies only when the agency is expressly authorized by statute to make such an interpretation. *Famous Brands,* 347 N.W.2d at 884; *Tieszen,* 343 N.W.2d at 98. The Secretary of Revenue has been given no such power under the statutes applicable in this case. *Compare Matter of Sales or Use Tax* (involving SDCL 10–46–1(6) which expressly gives the Secretary of Revenue power to interpret the meaning of the word "agents" for use tax purposes).

The issue on appeal is whether LaBelle's had sufficient "right or power ... incidental to the ownership" of the catalogs and flyers once in South Dakota to qualify as a

"use ... in this state" under SDCL 10–46–1(2) and 2.

Department relies heavily upon our *K-Mart Corp. v. Dept. of Revenue*, 345 N.W.2d 55 (S.D.1984), decision. The retailer in *K–Mart* contracted with local newspapers to have its advertisements inserted in its publications for distribution in South Dakota. The supplements were printed and sent to a publisher outside of South Dakota. The publisher received a distribution list from K–Mart setting forth the South Dakota newspapers to which it sent the supplements. Essentially, K–Mart made the same arguments we find here. We held that because K–Mart owned the supplements and retained the power to control the date of distribution and the numbers of copies to be distributed after the copies entered South Dakota, K–Mart "use[d]" the supplements within the meaning of SDCL 10–46–2.

Although the facts of *K–Mart* are similar to those in this case, we distinguish advertisements delivered in the *K–Mart* fashion from the direct mailings in this case. Unlike K–Mart, LaBelle's had no in-state contract and no similar in-state power. All control over the present literature within our state belonged to either the post office or the advertisement recipients. Even if the literature could not be delivered, it again would be handled by the post office until outside of South Dakota. By concluding the catalogs and flyers were taxable, Department concentrated more on the material's generation of in-state sales for LaBelle's than on whether LaBelle's activities fit the language of the tax statutes. In contrast, *K–Mart* focuses and turns upon the statutory language; not merely upon whether the newspaper supplements generated in-state sales for K–Mart.

Department cites *Northwestern National Bank of Sioux Falls v. Gillis*, 82 S.D. 457, 148 N.W.2d 293 (1967), as demonstrating a legislative intent behind SDCL 10–46–2 and 1(2) to tax LaBelle's for its activities in question here. *Gillis* states that the purpose of the use tax is not only to raise money but also to "help the retailers in this state, who are subject to the sales tax, compete on an equal footing with out-of-state competitors." 82 S.D. at 467, 148 N.W.2d at 298. Department also points out that the use tax is designed to prevent avoidance of our state sales tax. *E.g., Woods v. M.J. Kelley Co.*, 592 S.W.2d 567 (Tenn.1980). Since a local printer selling flyers or catalogs (or its purchaser) would be liable for the sales tax, LaBelle's should pay a use tax on the literature, according to Department. Department also argues that if LaBelle's does not pay tax on the catalogs local retailers are put at a competitive disadvantage contrary to legislative intent. While we agree with Department's interpretation of our legislature's intent, we cannot apply the statute to activity which is plainly alien to its language. *See Famous Brands, supra.* We must honor the rule that statutes imposing a tax are to be construed liberally in favor of the taxpayer. *Nash Finch, supra.*

Department argues it is illogical to subject advertisements delivered in the *K–Mart* fashion to the use tax, but not those delivered as in this case. However, we find support for this dichotomy in *J.C. Penney, supra,* relied upon in *K–Mart.* In *J.C. Penney,* the Wisconsin Supreme Court considered both the *K–Mart* situation and the one before us now,[1] and reached the same contrasting conclusions as this court. Similarly, that Court was also confronted with the argument that reaching such contrasting results was irrational. We agree with its observation that "[t]his contention is more appropriately directed to the legislature." *J.C. Penney,* 323 N.W.2d at 170.[2]

---

1. In holding the directly mailed material untaxable, *J.C. Penney* employs a rationale differing from that relied upon here. *See id.,* 323 N.W.2d at 170.

2. Counsel for LaBelle's concede that the Wisconsin Legislature amended their statute after the *J.C. Penney* decision to make the advertising procedures LaBelle's utilized here subject to the Wisconsin Use Tax. *See* Wisc.Stat. § 77.-51(15)(b).

The circuit court's judgment is reversed and taxpayer's refund request of $42,673 shall be honored.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I dissent for all of the following reasons.

LaBelle's argues that it had insufficient "right or power ... incidental to the ownership" of the catalog and flyer shipments once in South Dakota to qualify as a "use" under SDCL §§ 10–46–1(2) and –2. For LaBelle's to succeed on this theory, it must distinguish *K–Mart Corp. v. Dept. of Revenue*, 345 N.W.2d 55 (S.D.1984). The retailer in *K–Mart* published advertisements to be distributed as part of South Dakota newspapers. The supplements were printed in Michigan and sent to a publisher also located outside of South Dakota. The publisher received a distribution list from K–Mart setting forth the South Dakota newspapers to which the publisher then sent the supplements. K–Mart made basically the same arguments that LaBelle's does here, contending that SDCL §§ 10–46–1(2) and –2 were not met because K–Mart did not use the advertisements within South Dakota and that K–Mart exercised no "right or power" over the newspaper supplements from the time the supplements were printed out of state. This court disagreed. Instead, we adopted

> ... Department's position that K–Mart uses' the supplements within the state within the meaning of SDCL 10–46–2 by virtue of its ownership of the supplements and its power to determine the date of distribution and the numbers of copies to be distributed.

345 N.W.2d at 58, *citing Wisconsin Dept. of Revenue v. J.C. Penney Co.*, 108 Wis.2d 662, 323 N.W.2d 168 (1982).

Unlike the retailer in *K–Mart*, LaBelle's contends that it did not own nor have control over the catalogs and flyers once in South Dakota. It cites no authority for this proposition. LaBelle's contrasts its situation with *K–Mart* where the retailer owned the supplements after they were received by the South Dakota newspapers. LaBelle's argues that once delivered, the catalogs and flyers belonged to the residents. LaBelle's further argues that K–Mart had more power over its advertisements than did LaBelle's because K–Mart had the power to " 'determine the date of distribution and the number of copies to be distributed,' *after the [K–Mart] supplements were delivered in South Dakota."* *Id.*, (emphasis added).

Department claims the cases are essentially identical except that LaBelle's catalogs were shipped directly to the in-state residents instead of to newspapers. Department argues that K–Mart had less in-state control than does LaBelle's because the newspapers in *K–Mart* had the power to edit the advertisements, and their personnel handled the supplements.

Both sides cite considerable authority for their respective positions. Apart from *J.C. Penney, supra,* which this court relied on in *K–Mart*, these cases are not extremely helpful. The *J.C. Penney* case ruled on the taxability of both (1) catalogs sent directly to consumers from out of state (this case), and (2) out-of-state shipments of advertisements to in-state newspapers for insertion (*K–Mart*). The case holds per *K–Mart* that shipments to newspapers fall within the use tax. However, *J.C. Penney* also holds that mailings directly to the consumers are not taxable.

In *J.C. Penney*, the court held that catalogs printed in Indiana and mailed to Wisconsin were not taxable in Wisconsin, but that newspaper supplements printed out-of-state, but delivered by local newspapers, were subject to tax. 323 N.W.2d at 171–172. The court determined that J.C. Penney "used" the newspaper supplements, but did not "use" the catalogs. This appears illogical and honors form over substance. A catalog is similar to a newspaper supplement. They both contain pictures of items for sale with prices and descriptions. In actual practice, J.C. Penney got more use out of the *catalogs* than

they did the *supplements*. A supplement is only an advertisement. If a sale is made to a person who uses a supplement, J.C. Penney must still use its local store to make the sale. Although some customers use the catalog in the same manner, many customers use the catalog to order merchandise. In addition to pictures and descriptions, the catalog contains order blanks and ordering and shipping instructions. The supplements are an inducement to buy. The catalogs are used not only to induce sales, but to make sales. If the supplements are used in the state of receipt, so are the catalogs.

The use tax is not a property tax or a tax on consumption of property. In *Inter-State Nurseries, Inc. v. Iowa Department of Revenue*, 164 N.W.2d 858 (Iowa 1969), the court held that an Iowa nursery company was "using" its catalogs "... as a means of advertising and promoting the sale of its products ..." even though they were received, read, or discarded by others. *Id.* at 863.

Under cases such as *Philco Corporation v. Department of Revenue*, 40 Ill.2d 312, 239 N.E.2d 805 (1968), physical manipulation of property is not a necessary incident to use of the property for use tax purposes. In construing a definition of "use" similar to South Dakota's, the court quotes with approval from Kessling, *Conflicting Conceptions of Ownership in Taxation*, 44 Cal.L.Rev. 886, 867 (1956): "When a person buys property in one state for the purpose of leasing it and transporting it to a person in another state where a use tax law is in effect, the lessor is considered as using the property in the second state for the production of income and hence is subject to such state's use tax even though he personally makes no physical use of the property in such state." One of the appellants in *Philco, supra*, Rental Equipment Company, Inc., signed its leases in Missouri, the lessees picked up the equipment in Missouri, and the lessor never had representatives in Illinois, but the court nevertheless upheld Illinois' assessment of use tax on the rental equipment even though one of the items was in Illinois

for only nine days. *Id.* at 809. Although renting equipment may seem different from mailing catalogs at first glance, all of the important elements are the same. In both cases, tangible personal property is brought into the state by an unrelated third party and use tax liability arises even though the taxpayer is not the person who physically possesses the property within the taxing state.

LaBelle's asserts that tax liability should be avoided because it did not use the catalogs in South Dakota. However, LaBelle's has stores in South Dakota, the catalogs are in South Dakota, and the recipients of the catalogs are in South Dakota. LaBelle's furnishes and controls the mailing list for the catalogs and also pays for them. The reason the catalogs are in this state is to generate sales for LaBelle's. This constitutes the same use that K–Mart made of its advertising supplements. The method of delivery should be irrelevant.

This court's decision in *Northwestern National Bank of Sioux Falls v. Gillis*, 82 S.D. 457, 148 N.W.2d 293 (1967), is helpful in discerning the legislative intent behind SDCL §§ 10–46–1(2) and –2. This case states that the purpose of the use tax is not only to raise money but also to help "the retailers in this state, who are subject to the sales tax, compete on an equal footing with out-of-state competitors." 82 S.D. at 467, 148 N.W.2d at 298. It seems plain that the use tax is designed to prevent avoidance of the sales tax. *See: e.g., Woods v. M.J. Kelley Co.*, 592 S.W.2d 567, 570 (Tenn.1980). Department reasons that since a local printer selling flyers or catalogs (or its purchaser) would be liable for the sales tax, LaBelle's should pay a use tax on the literature. Department further reasons that local retailers are put at a competitive disadvantage if LaBelle's does not pay tax on the catalogs. LaBelle's does not argue that our legislature did not intend to impose a tax on LaBelle's for these activities. It merely repeats its argument that the language of the statutes clearly excludes this activity.

In my view, LaBelle's arguments simply miss the controlling point. LaBelle's used the catalogs in South Dakota. They even stored those catalogs not delivered until returned. It is not necessary that La-Belle's employees physically ride on the mail truck—the use of the catalogs by South Dakota residents was LaBelle's use under the statute. LaBelle's exercised power and control through its agents in South Dakota even though its own employees may not have physically entered the state. The evidence shows that LaBelle's exercised power and control over the catalogs through the printing, the number of catalogs distributed, the timing of the delivery of the catalogs in South Dakota, and even the return of undelivered catalogs, all to the same or greater extent than in the *K–Mart* case. As stated by the trial court, "LaBelle's has raised a number of distinctions between (*K–Mart*) and this case, however, I am of the opinion that they are distinctions without difference." So am I. This court should discern substance over form and affirm the use tax.