FIFTH DIVISION

FILED: 6/5/98

No. 1-97-2774

FIRST ACCESS MATERIAL HANDLING, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. ) 

) No. 95 L 50864

ERNEST R. WISH, Director, City of       ) 

Chicago Department of Revenue, ) 

and the CITY OF CHICAGO DEPARTMENT OF )

REVENUE, ) Honorable

) Joanne L. Lanigan

Defendants-Appellees. ) Judge Presiding.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, First Access Material Handling, appeals the circuit court's order which affirmed the City of Chicago Department of Revenue's (Department) assessment of taxes and penalties against the plaintiff.

The plaintiff is a corporation engaged in the business of leasing material handling equipment, primarily forklifts.  While all of its offices are located outside the city of Chicago, the plaintiff leases forklifts to lessees in Chicago.  Following an audit, the Department assessed the plaintiff personal property lease transaction taxes, use taxes for nontitled personal property, interest on the overdue taxes, and late payment and negligence penalties.  As of July 31, 1995, the taxes, penalties and interest due totalled $80,702.02.

On April 29, 1994, the plaintiff filed a protest and a petition for a hearing.  The plaintiff claimed that the Department had improperly assessed lease transaction taxes on hourly overtime charges which, it alleged, were not rental charges but charges for maintenance.  The plaintiff also claimed that the Department had improperly used the full value of each piece of equipment in calculating the amount of use tax due rather than apportioning the tax to take into account the period of time in which the equipment was actually used in Chicago.  The plaintiff maintained that, even if the taxes were properly assessed, there was no basis to impose any penalties because it reasonably believed it did not owe the taxes.

An administrative hearing before one of the Department's hearing officers was conducted on April 11, 1995.  Section 3-4-340(H) of the Uniform Revenue Procedures Ordinance (Revenue Ordinance) provides that, at such an evidentiary hearing:

"the tax determination and assessment and the assessment of any nontax debt shall be prima facie correct and the protesting party shall have the burden of proving with books, records and other documentary evidence that it is incorrect."

Chicago Municipal Code, §3-4-340(H) (1997).

Mark Bunetta, the Department revenue auditor who audited the plaintiff, testified that he reviewed the plaintiff's general ledgers, rental and sales invoices, and lease agreements.  Bunetta assessed the plaintiff $7,060.56 in use tax for nontitled personal property (use tax) for the period of January 1992 through June 1993.  He determined the plaintiff's use tax liability by computing 1% of the purchase price of all equipment used in Chicago during the audit period and on which, according to the invoices, no sales tax had previously been paid.  Bunetta did not take into consideration the fact that the equipment was used both inside and outside Chicago.  Bunetta also assessed the plaintiff interest, late payment penalties, and negligence penalties on the unpaid use tax.

In addition to the use tax, Bunetta assessed the plaintiff $33,486.94 in personal property lease transaction tax (transaction tax) for the period January 1989 through November 1993, plus interest, late payment penalties, and negligence penalties.  Bunetta assessed the transaction tax because the plaintiff had failed to self-assess and remit the transaction tax due on overtime hourly rental charges it collected from its customers.  These overtime rental charges were recorded under the rental revenue account in the plaintiff's general ledger and were listed as long-term rental overtime charges on the plaintiff's invoices.  In the plaintiff's lease agreements with its customers, the overtime charges were characterized as hourly rental overtime charges for equipment used in excess of a specified number of hours.

Bunetta's audit file, which was admitted into evidence, contained a copy of an executed lease agreement between the plaintiff, under its former name of ClarkLift of Chicago South, Inc., and one of its customers.  That lease, executed February 25, 1988, contained the following provision regarding hourly overtime charges:

"13. OVERTIME CHARGE.

The hourly overtime charge provided in Section 12 shall apply to each hour of use of any unit of equipment in excess of 500/250 hours in any calendar quarter as determined by the Hobbs Hour Meter or other mechanical device used to record hours of use supplied with each unit (herein called "hour meter").  ***  LESSEE agrees to pay said overtime rental charges within ten (10) days from the date of LESSOR'S invoices therefor."

The plaintiff's treasurer, Al Wilkans, testified on the plaintiff's behalf.  According to Wilkans, a customer entering into a long-term lease with the plaintiff has the option of purchasing maintenance from the plaintiff or providing its own maintenance.  If the customer purchases maintenance service from the plaintiff, that service is included in the lease rate.  When a customer wishes to purchase maintenance service with the lease, the plaintiff surveys the customer's operation and asks the customer how many hours it intends to use the equipment.  Each piece of equipment contains an hour meter and if the customer uses the equipment in excess of the estimated number of hours, it is charged an hourly overtime charge to compensate for the additional maintenance required.  If a customer does not request maintenance services from the plaintiff, there is no limit to the number of hours the customer can use the equipment for the base rental fee.  The transaction tax is collected on the base rental fee but not on the hourly overtime charges.

Wilkans further testified that, from February 1992 onward, the plaintiff ordered its equipment from Toyota Motor Credit Corporation (Toyota).  The plaintiff sold the equipment to Toyota, who was the actual lessor.  Toyota billed the customer the base rate, plus the maintenance fee if applicable, and forwarded the maintenance fee to the plaintiff.  The plaintiff billed its maintenance customers separately for overtime based on the hour meter readings done by its maintenance staff.  The plaintiff did not record the maintenance charges under a separate account in its books and records. 

Wilkans testified that the Department audited the plaintiff around 1984, at which time the plaintiff's leasing arrangements were the same with respect to the overtime charges, and the Department found the plaintiff to be in full compliance at that time.  Wilkans was not aware of the Chicago use tax until the current audit.

The plaintiff submitted into evidence letters from two of its customers, each of which stated that it understood the hourly overtime charges were intended to offset additional maintenance required when the equipment was used in excess of the estimated number of hours.  The plaintiff also submitted rental control cards for the equipment on which the use tax was assessed.  Those records listed the names and/or locations of the customers to whom the equipment was rented and the dates of each rental.  Wilkans testified that the cards recorded all rentals of a piece of equipment from the date that it "came into [plaintiff's] short-term fleet."  Some of the forms contain a date listed at the top, which Wilkans testified was the date that the piece of equipment came into the fleet.  The plaintiff also submitted a blank copy of the lease agreement it uses with Toyota.  Wilkans testified that the plaintiff is listed as the lessor on these leases.  The blank lease contained boxes to indicate whether the lease was or was not a full service maintenance agreement.  The lease also contained a provision, almost identical to the above-quoted provision, regarding "an hourly overtime rate" and stating that the lessee "agrees to pay said overtime rental charges within 10 days from the date of LESSOR'S invoice for such charges."

The hearing officer issued written recommendations and findings of fact, recommending that the assessment of the transaction and use taxes with penalties and interest be affirmed and that interest continue to accrue on the unpaid balance.  On August 31, 1995, the defendant Ernest R. Wish, Director of the Department, issued a final determination, adopting the hearing officer's recommendations.  The plaintiff filed a petition entitled "petition for writ of 
certiorari
 and administrative review" in the circuit court, and the circuit court affirmed the Department's decision.

The actions of an administrative agency are generally presumed to be reviewable unless there is a statutory bar to review or statutory language making the agency's decision a matter of unreviewable discretion.  
Hanrahan v. Williams
, 174 Ill. 2d 268, 273, 673 N.E.2d 251, 254 (1996).  We find no such bar to review in the instant case.  While the Department's actions are reviewable, the Administrative Review Law does not apply because it is not expressly adopted by the Chicago ordinance creating the Department and conferring power upon it.  735 ILCS 5/3-102 (West 1996)); Chicago Municipal Code, Chapter 2-80 (1997).  When the statute creating or conferring power upon an administrative agency does not expressly adopt the Administrative Review Law or provide other means of review, then a common law writ of 
certiorari
 is the appropriate method of reviewing the agency's decision.  
Smith v. Department of Public Aid
, 67 Ill. 2d 529, 540, 367 N.E.2d 1286, 1292-93 (1977).  The standards of review are essentially the same under a writ of 
certiorari
 and the Administrative Review Law.  
Hanrahan
, 174 Ill. 2d at 272.

When reviewing an administrative agency's decision, we are limited to determining whether the decision is against the manifest weight of the evidence.  
Przislicki v. City of Chicago
, 212 Ill. App. 3d 661, 668, 571 N.E.2d 762, 767 (1991).  We cannot substitute our judgment for that of the agency, and if the record contains evidence to support the agency's decision, we must affirm.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 88, 606 N.E.2d 1111, 1117 (1992).  We review any legal questions presented 
de
 
novo
, and, while an administrative agency's interpretation of a statute is relevant, it is not binding on this court.  
Thomas M. Madden & Co. v. Department of Revenue
, 272 Ill. App. 3d 212, 215, 651 N.E.2d 218, 220 (1995); 
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995).

We first address the plaintiff's arguments regarding the assessment of the transaction tax.  Section 3-32-030 of the Chicago Personal Property Lease Transaction Tax Ordinance (Transaction Tax Ordinance) provides that a 6% tax is imposed on "(1) the lease or rental in the city of personal property, or (2) the privilege of using in the city personal property that is leased or rented outside the city."  Chicago Municipal Code, §3-32-030(A)(B)(1995).  Furthermore, the Transaction Tax Ordinance provides that "[i]t shall be the duty of each lessor to collect the tax imposed by this chapter from the lessee at the time of each lease or rental payment, and to remit the tax to the department."  Chicago Municipal Code, §3-32-070(A) (1995).

The plaintiff initially argues that if any transaction tax is due, Toyota is liable for the tax because it is the actual lessor of the forklifts.  The defendants contend that the plaintiff waived this issue by failing to raise it at the administrative hearing or before the trial court.  
LaSalle Partners, Inc. v. Illinois Property Tax Appeal Board
, 269 Ill. App. 3d 621, 631, 646 N.E.2d 935, 942 (1995) (an argument not made at the administrative proceeding is waived); 
Rispoli v. Police Board
, 188 Ill. App. 3d 622, 634, 544 N.E.2d 1063, 1071 (1989) (argument not raised at administrative review in the trial court deemed waived).  Even if we were to consider the argument, we would reject it.  Wilkans' testified that the plaintiff sells all of its equipment to Toyota, who is the actual lessor.  One of the plaintiff's exhibits was a blank copy of the lease it uses with Toyota, on which the plaintiff is listed as the lessor and Toyota is listed as the assignee of the lease agreement.  The plaintiff did not present any completed leases showing assignments to Toyota.  In addition, the plaintiff testified that it billed and collected the overtime charges directly.  There is sufficient evidence in the record to support the conclusion that the plaintiff was liable for the transaction tax.

The plaintiff next contends that the hourly overtime charges in question are fees charged for maintenance rather than for the use of the equipment and, therefore, are not subject to the transaction tax.  Section 3-32-020(J) of the Transaction Tax Ordinance provides that the lease price, which is used to calculate transaction tax liability,

"shall exclude separately stated charges not for the use of personal property.  If any separately stated charge is not optional, it shall be presumed unless proved otherwise that it is part of the charge for the use of the personal property."

Chicago Municipal Code, §3-32-020(J) (1995).  The defendants concede that the transaction tax does not apply to service charges, such as those for maintenance, but contend that the record shows the hourly overtime charges were actually rental charges.

In support of its claim that the hourly overtime charges were not rental charges, the plaintiff relies on Wilkans' testimony that a lessee under a long-term lease has the option of leasing a forklift with or without maintenance and on the letters submitted from two of its customers expressing their beliefs that the hourly overtime charges were for maintenance.  

The record, however, also contains two lease agreements, each of which contain nearly identical provisions regarding the hourly overtime charges.  No mention of maintenance is made in those provisions, and the hourly overtime charges are referred to as "overtime rental charges."  Based on the evidence, we do not find the assessment of transaction taxes on the hourly overtime charges to be against the manifest weight of the evidence.

We next address the plaintiff's contentions regarding its use tax liability.  Section 3-27-030(A) of the Chicago Use Tax Ordinance for Nontitled Personal Property (Use Tax Ordinance) provides for the imposition of tax "upon the privilege of using in the city nontitled tangible personal property which is purchased at retail on or after January 1, 1992 from a retailer located outside the city."  Chicago Municipal Code, §3-27-030(A) (1992).  The tax imposed is 1% of the selling price of the personal property in question.  Chicago Municipal Code, §3-27-030(A) (1992). 

The plaintiff argues that the defendants' method of calculating its use tax liability violated its due process rights under the United States and Illinois constitutions because the tax as calculated by the Department does not accurately reflect its activities in the City.  The plaintiff claims that, rather than assessing it 1% of the full purchase price of the equipment, the Department should have apportioned the taxes to reflect the percentage of time that the equipment was used inside the city of Chicago.  The defendants argue that the plaintiff has waived this due process argument because it did not raise it at the administrative hearing or before the trial court.  See 
Jackson v. Retirement Board of the Policeman's Annuity and Benefit Fund of the City of Chicago
, 293 Ill. App. 3d 694, 698, 688 N.E.2d 782, 785 (1997); 
S.W. v. Department of Children and Family Services
, 276 Ill. App. 3d 672, 679, 658 N.E.2d 1301, 1307 (1995).

Assuming 
arguendo
 that the plaintiff did not waive this issue, the Department's method of computing the plaintiff's use tax liability did not violate its due process rights.  Due process requires that there must be a minimum connection between the taxpayer and the taxing body and that any income attributed to the taxing body must fairly reflect the taxpayer's activities in the taxing body's jurisdiction.  
Quill Corp. North Dakota
, 504 U.S. 298, 306, 119 L.Ed. 2d 91, 102, 112 S. Ct. 1904, 1909-10 (1992); 
Container Corp. of America v. Franchise Tax Board
, 463 U.S. 159, 165-66, 77 L. Ed.2d 545, 553, 103 S.Ct. 2933, 2940 (1983).  
The plaintiff contends that, while it had sufficient contacts with Chicago to subject it to the tax, the Department's failure to apportion the tax to reflect the period of time for which the equipment was used in Chicago violated the requirement that the tax fairly reflect the plaintiff's activities in Chicago.

The tax involved here, though, is not an income based tax but a tax on the privilege of using property inside the city of Chicago which is calculated as a percentage of the value of the property used.  
In 
United States v. City of Detroit
, 355 U.S. 466, 470, 2 L. Ed. 2d 424, 427, 78 S.Ct. 474, 476 (1958), the United States Supreme Court held that "[i]n measuring such a use tax it seems neither irregular nor extravagant to resort to the value of the property used."  In 
Philco Corp. v. Department of Revenue
, 40 Ill. 2d 312, 239 N.E.2d 805 (1968),
 two out-of-state corporations were assessed an Illinois state use tax on property they leased within the state.  The corporations argued that the tax was " 'inequitable on its face' " because it was based on the entire value of the leased equipment without regard to how long it was used in the state.  
Philco
, 40 Ill. 2d at 319.  The court stated that the use tax was a nonrecurrent tax on the privilege of using the property in the state.  Once the tax is paid, the owner may use the property in the state as often as he wishes.  The court further noted that the record only revealed the period of time the equipment was used in the state during the audit period and that it was impossible to determine from the record how long and how frequently the equipment would be used in the state in the future.  
Philco
, 40 Ill. 2d at 320.

The use tax assessed against the plaintiff is a tax on the privilege of using its property within the city of Chicago.  Once the tax is paid, the plaintiff may use the property as frequently as it wishes within the City, and we cannot determine from the record how often it will do so.  We do not find the City's refusal to apportion the taxes to reflect the property's out-of-city use to be a violation of the plaintiff's due process rights.

The plaintiff also argues that the imposition of the use tax on the full value of the forklifts was contrary to section 3-27-030(C) of the Use Tax Ordinance, which provides that, if the nontitled personal property is used outside the city before its use inside the city:

"the 'selling price' of the property for purposes of computing the tax imposed by subsection (A) of this section shall be reduced by an amount which represents a reasonable allowance for depreciation attributable to the prior period of out-of-city use."

Chicago Municipal Code, §3-27-030(C) (1992).  The plaintiff contends that its rental records for all of the forklifts subjected to the use tax establish that it is entitled to the depreciation allowance for out-of-city use.  The hearing officer viewed these records and made a factual finding that the rental records were unclear as to the purchase dates, rental dates, value and depreciation of the equipment.  She concluded that the plaintiff had not met its burden of proof in establishing it was entitled to the depreciation allowance.

Wilkans testified that the rental records the plaintiff submitted recorded all rentals which took place from the date each piece of equipment came into the plaintiff's fleet.  This testimony was unrebutted.  The plaintiff submitted rental records for 43 pieces of equipment.  The records establish that some of these pieces of equipment were first leased to customers in the city of Chicago.  For some other pieces of equipment, it is unclear whether the equipment was leased outside the city prior to being leased inside the city because the customers to whom the equipment was leased are not identified by town.  The records do establish, however, that 12 of the 43 pieces of equipment on which the use tax was assessed were leased to customers outside the city of Chicago before being leased to customers in the city, even if only for a short time.  Those pieces of equipment, as identified by serial number, are as follows: 10133, 10486, 71220, 71248, 72748, 72773, 72779, 74681, 74682, 75000, 76815, and 76846.
(footnote: 1)  Therefore, we find that the unrebutted evidence established that the plaintiff was entitled to a reasonable allowance for depreciation of those pieces of equipment.  We, therefore, reverse the Department's assessment of use taxes, as well as the corresponding interest and late payment and negligence penalties, and remand this action to the Department for a determination of the plaintiff's use tax liability after granting the plaintiff the reasonable depreciation allowance to which it is entitled.

We next address the defendant's contention that, even if it is liable for the taxes assessed, there was no basis for imposing the late payment and negligence penalties.  The Department assessed the plaintiff a 10% late penalty pursuant to section 3-4-200 of the Uniform Revenue Procedures Ordinance (Revenue Ordinance).  Chicago Municipal Code, §3-4-200(B) (1997).  It also assessed a 25% penalty, pursuant to section 3-4-220 of the Revenue Ordinance, for the plaintiff's negligent failure to pay the taxes.  Chicago Municipal Code, §3-4-220 (1997).

The Revenue Ordinance provides that the 10% late penalty shall be waived if the taxpayer had reasonable cause for its failure to pay.  Chicago Municipal Code, §3-4-200(C) (1997).  It further provides that, if the Director does not promulgate standards for determining what constitutes reasonable cause, the criteria of the United States Internal Revenue Service (IRS) shall apply.  Chicago Municipal Code, §3-4-240 (1997).

The IRS "defines reasonable cause as those reasons deemed administratively acceptable to the Service for justifying the non-assertion or abatement of applicable penalties against taxpayers."  I.R.M. (20)310(3) (7-27-92).  The taxpayer generally bears the burden of proof in establishing that he had reasonable cause for his failure to pay certain taxes.  I.R.M. (20)331(1) (7-27-92).  Reasonable cause will generally be found to exist where the taxpayer exercised ordinary business care and prudence but, due to circumstances beyond his control, was unable to pay the taxes in a timely manner.  I.R.M. (20)331(6) (7-27-92).

The plaintiff claims that it had reasonable cause for its failure to pay the transaction taxes because it had previously been audited and had not been assessed this tax on the hourly overtime charges.  Except for Wilkans' statement to that effect, the plaintiff offered no evidence of the previous audit.  Therefore, we find that the assessment of late payment and negligence penalties upon the transaction taxes was not against the manifest weight of the evidence, and we affirm the assessment of those penalties.

Although we have reversed the late payment and negligence penalties imposed upon the unpaid use taxes, we will address the plaintiff's arguments regarding these penalties because the penalties may be imposed again on remand.  The plaintiff claims it had reasonable cause for its failure to pay the use tax because it was unaware the tax existed prior to the audit.  The Internal Revenue Manual provides that ordinary business care and prudence require a taxpayer to be aware of his tax obligations and that reasonable cause will not be presumed where a taxpayer claims ignorance of the law.  I.R.M. (20)333.5(1)(3) (7-27-92).  It further provides that ignorance of the law, when combined with other circumstances such as limited education or a lack of previous tax and penalty experience, can support a finding of reasonable cause.  I.R.M. (20)333.5(1) (7-27-92).  Reasonable cause may also be established where the taxpayer's failure to pay results from a recent change in the tax laws of which it could not be reasonably expected to know.  I.R.M. (20)333.5(2) (7-27-92).

The plaintiff did not offer any evidence which established that it should not have reasonably been expected to know that the use tax became effective in January 1992.  Nor is there any evidence of a lack of previous tax experience or other circumstance which would support a finding of reasonable cause in this case.

Accordingly, we affirm the trial court's ruling with respect to the plaintiff's transaction tax liability and the late payment and negligence penalties imposed thereon; reverse the assessment of use taxes against the plaintiff, along with the late payment and negligence penalties imposed thereon; and remand this action to the Department for a determination of the plaintiff's use tax liability and penalties, if any, after a reasonable depreciation allowance for the stated pieces of equipment.

Affirmed in part, reversed in part, and remanded.

HARTMAN and THEIS, JJ., concurring.

FOOTNOTES
1:  While the rental records establish that the pieces of equipment with the serial numbers 21604, 71093 and 76762 were also leased outside the city before being leased in the city, those pieces are not listed on the summary of assets on which the use tax was apparently assessed.