(No. 25478.—

THE TRUSTEES OF SCHOOLS OF TOWNSHIP No. 8, Appellants, *vs.* HENRY E. LILLY *et al.* Appellees.

*Opinion filed February 21, 1940—Rehearing denied April 10, 1940.*

432

MATHENY & WELKER, and JONES, MURRAY & MILLER, for appellants.

ARTHUR ROE, and CRAIG & CRAIG, for appellees.

Mr. JUSTICE SHAW delivered the opinion of the court:

The appellants, as trustees of schools for township No. 8, north, range three east of the third principal meridian, brought an action of ejectment in the circuit court of Fayette county, demanding possession of forty acres of land, being lot ten, otherwise described as the northwest quarter of the southeast quarter of section 16, township 8 north, range 3 east of the third principal meridian in the county of Fayette and State of Illinois. The judgment was for the defendant and this appeal followed. There is no substantial controversy as to the facts.

Plaintiffs offered no evidence as to their title, relying entirely upon the grant of section 16 to the State of Illinois as school land and the absence of any ,evidence that any patent to it was ever issued. For the defendant Lilly it was proved from the public records that he held title of record from a series of conveyances beginning with a sheriff's deed in 1865 and that he, himself, has been in actual possession of the lands for the past thirty-nine years. The grantees in the sheriff's deed, which is the beginning of the record title to this land, were the heirs and legal representatives of Augustus C. French, a former Governor of this State, and the property had been sold on execution against one Thomas Wright. The heirs of Governor French, who received the title, afterwards reconveyed it to the heirs of this same Thomas Wright and, thereafter, the title comes down regularly to the present defendant Lilly. The holders of certain oil and gas leases were originally parties to this suit but were afterwards dismissed and none of them was a party to this appeal.

The evidence for the defendant Lilly conclusively proved that for the past seventy-eight consecutive years he, and those by, through and under whom he claimed title, have been in the adverse possession of this land, farming it, keeping it fenced and in cultivation. One witness who was eighty-two years of age testified that he had personally known the land for seventy years; that his father cut corn on it and that Tom Wright was then in possession of it. That even then, when he was a boy, there were fences on three sides of it but he could not remember the other one. This witness further testified that during the period of fifteen years he had been one of the trustees of schools for township No. 8, and that neither during that fifteen years nor at any other time had any one but Lilly, and his predecessors in title, been in possession of the land. That while he was trustee, as the witness said: "I don't know of anything we did in regard to that land. I have known Henry

E. Lilly since I was a boy. I knew when he took possession of this land, but don't remember how many years it has been. I would judge forty years, or close to that. He has farmed the land and pastured it part of the time. * * * I have not seen any one else in possession of that land since he took possession."

Allie Beck, fifty-three years of age and for many years a trustee of the township in question, testified to the same general effect, as did Emery Hopper, sixty-four years of age, Laura Miller, seventy years of age, and other witnesses.

It was also proved by the public records that with the exception of a few years for which the records were missing, this land has been assessed for general taxation since, and including, the year 1862, and that these taxes have been regularly paid by the record claimant to the title in each year. None of the foregoing facts are disputed.

The appellants placed their entire reliance on their contention that the Statute of Limitations does not run against the State so long as it holds title for the use of the public or any part thereof. (*Black* v. *Chicago, Burlington and Quincy Railroad Co.* 237 Ill. 500; *Trustees of Commons of Kaskaskia* v. *McClure,* 167 id. 23.) They say there is no affirmative evidence that this land was ever patented by the State of Illinois and that, therefore, the State still owns it in trust for the inhabitants of their township for school purposes; that no Statute of Limitations runs against the State and that, therefore, although that statute has run approximately four consecutive terms they may nevertheless demand possession of this land.

On the other hand, the appellees seek to sustain the judgment of the trial court because, as they say, under all of the circumstances of this case there is a presumption of an ancient grant. They also insist that where title is held, as here, for a very limited portion of the public, the Statute of Limitations applies, citing *Brown* v. *Trustees of Schools,* 224 Ill. 184, and other similar cases. Inasmuch

as the first proposition is controlling it will be unnecessary to discuss the second.

At the very beginning of any consideration of this case it must be borne in mind that what the trial court had for decision was a question of fact. It was necessary to determine, as a fact, whether or not this land was ever patented by the State of Illinois. Regardless of any question of limitations it may be said that the rules of evidence apply to the State and any of its subdivisions the same as to any other litigant, and the rules pertaining to a presumption of an ancient grant are rules of evidence. (1 Greenleaf on Evidence, sec. 45.) Unless they are carefully analyzed, there appears to be some confusion in the cases between a title by statutory limitation and one founded upon a presumption of an ancient grant. It was said by this court in *Dexter* v. *Tree,* 117 Ill. 532, that every species of prescription is founded upon the presumption of an ancient right. The distinction is that between a rule of law and a question of fact, and that distinction, when the case is between private individuals, becomes immaterial after the statutory period has run. At the end of such a period, and by virtue of the statute, the presumption of fact crystallizes into a rule of law and becomes irrebuttable, even if it could be conclusively proved not only that there was no grant, but that the original entry had been by way of trespass. On the other hand, if a suit is based upon the presumption of a grant it is merely a rebuttable presumption of fact and, for the purposes of this case, it might be pointed out (without deciding the point) that so far as the State is concerned evidence in rebuttal might be produced at any time regardless of any statutory period. The point need not be decided in this case because no evidence was offered in rebuttal.

A good statement of the rule is found in volume 2 of Tiffany on Real Property, second edition (1920) and the author states it as follows: "The doctrine, occasionally asserted, that the long-continued possession of land by one

claiming as owner gives rise to the presumption of a valid conveyance to him or to the person under whom he claims, though ordinarily similar in its practical results to the Statutes of Limitation, is entirely independent thereof. It involves a presumption of the rightfulness of one's possession, while the Statutes of Limitation are by their terms applicable only when the possession is, apart from such statute, wrongful. As regards the doctrine referred to, of the presumption of a conveyance based on long continued possession, it has been said by the United States Supreme Court, that in order to presume a conveyance it is not necessary for the jury to believe that a conveyance was, in fact, executed, but it is sufficient if the evidence leads to the conclusion that the conveyance might have been executed, and that its existence would be a solution of the difficulties arising from its non-execution. Such a view has also been indicated by some of the State courts, while others merely recognize that long-continued possession is a fact, to be considered along with other facts, tending to show that a conveyance was executed, without being in any way conclusive in that regard. The cases do not ordinarily specify the length of the period of possession which will be sufficient to justify the presumption of a grant. It would appear, however, that in so far as the presumption is regarded as a rule of law, calling for the finding of a grant without regard to the actual belief of the jury therein, it must be supported by a possession of at least the period of the Statute of Limitations, and ordinarily its application has been based on a possession for a longer period. When the presumption, so called, involves merely an inference of the making of a conveyance from the fact of possession, taken in connection with other circumstances, it seems that a period of possession less than the limitation period might properly be considered in aid of the inference. A conveyance from the State may be presumed, although the Statute of Limitations will not ordinarily run against the State."

The author's statement that a grant may be presumed against the State is illustrated by the case of *United States* v. *Chavez*, 175 U. S. 509, 20 Sup. Ct. 159, where the doctrine of a presumed grant was applied. In that case the title was deficient in direct evidence and the question for decision, in the words of Mr. Justice McKenna, was "Is the deficiency supplied by the probative force of the possession of the land?" Possession for more than a hundred years was proved and proved to have been respected by Mexico before the territory was ceded to the United States, and it had to be decided whether the United States must continue to respect the same. The equities of the case were conceded, as they must be in the one we are considering. The United States Supreme Court said: "Whence arise those equities? That which establishes them may establish a title. Upon a long and uninterrupted possession, the law bases presumptions as sufficient for legal judgment, in the absence of rebutting circumstances, as formal instruments, or records, or articulate testimony. Not that formal instruments or records are unnecessary, but it will be presumed that they once existed and had been lost." The opinion reviews many cases and, among them, *Fletcher* v. *Fuller,* 120 U. S. 534, 7 Sup. Ct. 667, in which it was held that it was error to refuse to instruct the jury that the presumption it was authorized to make of a lost deed was not necessarily restricted to what it might fairly suppose to have occurred but rather to what might have occurred and seemed necessary to quiet title in the possessor. It was held that this instruction should have been given.

The court also quoted at length and with approval from other prior decisions which need not be here reviewed, but did cite 1 Greenleaf on Evidence, paragraph 45, as follows: "Accordingly, royal grants have thus been found by the jury, after an indefinitely long-continued peaceful enjoyment, accompanied by the usual acts of ownership," and also cited Best's Presumptions, page 109, as follows: "There

is hardly a species of act or document, public or private, that will not be presumed in support of possession. Even acts of Parliament may thus be presumed, as also will grants from the Crown."

Appellants, in their reply brief and argument in support thereof, urged nothing materially different than what we have said above—*i.e.,* that rules concerning the presumption of an ancient grant are rules of evidence pertaining to a question of fact as distinguished from a conclusive presumption of law in cases where the Statute of Limitations applies. They say: "Therefore, certainly, as far as we could go in agreeing with the proposition urged by the defendants, is to say that in certain instances long-continued possession may be considered in a proper case, with other secondary evidence, not to bar the State, but in aid of proof that the State has made a rightful conveyance." They seek to distinguish *United States* v. *Chaves, supra, State* v. *Taylor,* 135 Ark. 232, 205 S. W. 104, *Carter* v. *Goodson,* 114 Ark. 62, 169 S. W. 806, and other similar cases, where the doctrine has been applied on the grounds of differences in proof, but we doubt the validity of such distinctions. It is true, as they say, that long-continued possession is a fact to be considered in connection with other surrounding facts in determining whether or not there was a grant, but the application of this rule to the present case only strengthens the presumption, even if it should be conceded that it required strengthening. A presumption is an inference which common sense draws from the known course of events or from circumstances usually occurring in such cases. (*Sears* v. *Vaughan,* 230 Ill. 572.) A presumption of fact has the force and effect of a *prima facie* case and relieves, temporarily, the party in whose favor it arises from presenting further evidence. It is not evidence, of itself, but a legal rule or conclusion which may be rebutted directly by the evidence, or shown not to apply to the particular facts in the case. (*Sielback* v. *Groth-*

*man,* 248 Ill. 435.) At this point it is necessary to recollect that the plaintiffs offered no evidence on any question of fact, but relied solely on the Enabling act of Congress submitted to the first Illinois constitutional convention and the ratification thereof by that convention.

By the Enabling act, (3 U. S. Stat. at large, 428; S. H. Stat. (Const.) p. 107;) the Congress, on behalf of the United States, offered the People of Illinois certain powers whereby they might become organized into a State. The first sub-paragraph of section 6, of that act provided: "That section numbered sixteen, in every township, and, when such section has been sold or otherwise disposed of, other lands equivalent thereto, and as contiguous as may be, shall be granted to the State, for the use of the inhabitants of such township, for the use of schools." The act further provided that, upon acceptance by Illinois, its provisions shall be obligatory upon the State and the United States. This Enabling act was accepted by the constitutional convention at Kaskaskia and thereby title to section 16 in each township (except as above noted) passed to the State of Illinois, in trust for the use of the inhabitants of such township for school purposes. Reference to the various acts of the legislature of Illinois, shows that ever since Statehood the income from these school lands, the power to lease the same and the power, on compliance with legislative provisions, to sell the same, as well as the power to invest and receive the incomes from the proceeds of sale thereof, has always been committed to local public officials. (Ill. Rev. Stat. 1939, chap. 122, par. 242; Laws of 1819, p. 108; Laws of 1835, p. 25, 26; Rev. Stat. 1845, chap. 98; Laws of 1885, p. 246; Laws of 1889, p. 329.) Without attempting any detailed review of all the statutory provisions it may be said that, except for a bare legal title in the State, the entire beneficial use of each section 16, has been in the inhabitants of the township in which it is situated under the direct supervision and control of locally elected public

officials. It has always been geographically impossible for any trustee of schools, while lawfully acting as such, to reside more than three and one-half miles from this land. This was a short distance, and it is not easy to believe that any trustee, during the past eighty years, has been without personal knowledge of the title to this land claimed by Thomas Wright and his successors in interest.

Every one is presumed to know the law, but, entirely independent of this presumption, it must have been notorious among settlers in the new State of Illinois, and among those who began thickly to populate it in the early part of the last century, that section 16 was "school land."

Every trustee of schools, school director, tax assessor, tax collector, county clerk, county superintendent of schools, and every other public official has always been charged with this knowledge as to section 16, and there is always a presumption that legal duties have been properly performed and not otherwise. For nearly eighty years the trustees of this township received, accepted, used and profited by the taxes assessed against this land, yet it never could have been legally assessed, except upon an assumption by the local tax officials that it had been sold. This assumption must have arisen in the knowledge of the adjoining land owners that "Tom" Wright owned it. It is also to be noted that from the earliest times there have been penal statutes against trespass on school lands and one, in particular, providing a penalty recoverable by a *qui tam* action for the equal benefit of the informer and the township, for cutting trees on school land, (Ill. Rev. Stat. 1939, chap. 122, par. 244,) yet it is in the record that Wright and his successors in title cleared this land prior to fencing it and before putting it into cultivation.

The testimony of one witness in this case was from a man eighty-two years old and who had for a long time served as one of the trustees of schools for this township and he testified that Tom Wright was in possession of the

land when the witness' father cut corn on it, and that it was then fenced on three sides. There is little probability of ever finding testimony from any witness older than this one, and his testimony as to the apparent ownership of this land closely approximates that time, spoken of by Blackstone, "Whereof the memory of man runneth not to the contrary."

As above noted, we have held that presumptions are inferences which common sense draws from the known course of events or from circumstances usually occurring in such cases. As the United States Supreme Court pointed out, it is a sufficient basis for the presumption if, by legal possibility, a grant might have been issued. The record indicates that this land was probably granted by the State of Illinois at sometime during the Civil War, and it is not at all difficult to conceive that such a transaction during that time might have failed to receive proper entry of record. Certainly it never could have gotten on the tax books, where it has been for the last seventy-eight years, unless some public official, who was presumed to be doing his duty, had put it there. Considering the entire record, the presumption of a grant, the exclusive possession under claim of ownership for eighty years, the fencing, cultivation and use of the land, the prevailing reputation as to title in the neighborhood, together with the assessment and payment of taxes for seventy-eight years, we feel that the question of fact was properly decided by the circuit court in favor of the appellees. We believe that all of the circumstances of the case must lead the reasonable mind to the same conclusion as that arrived at by the circuit court, and its judgment is affirmed.

*Judgment affirmed.*