MARY F. TRONE, Plaintiff-Counterdefendant-Appellant and Cross-Appellee, *v.* EDMUND NELSON *et al.*, Defendants-Counterplaintiffs-Appellees and Cross-Appellants.—(CAROL KLITZ, Counterdefendant.)

Fourth District    No. 16062

Opinion filed October 17, 1980.

Carson D. Klitz, of Rushville, for appellant.

Ronald J. Kanoski, of Rushville, for appellees.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal concerns a rule of evidence which pertains to land titles and which has not been extensively examined by the reviewing courts of this State in recent times, namely, the presumption of ancient grant.

Plaintiff is a life tenant of 80 acres of rural land located in Schuyler County. Included within the 80 acres is a small tract of approximately three-quarters of acre on which sits an old schoolhouse, known locally as the "Hall Schoolhouse Site." Defendants, members and secretary of the Regional Board of School Trustees for Brown, Cass and Schuyler Counties (the Board), elected to sell the site at public sale after notice. Plaintiff brought an action in ejectment against the Board, which counterclaimed in an action to quiet title in themselves, joining as counterdefendants not only the plaintiff-life tenant but the remainderman as well. The Board's counterclaim was based on alternative theories of ancient grant and adverse possession.

The circuit court of Schuyler County, sitting without a jury, entered an order which, in effect, finds for the Board and against the plaintiff on the theory of ancient grant and denies relief on the theory of adverse possession. The court further found in favor of the Board, and against the plaintiff on plaintiff's complaint in ejectment. Plaintiff has appealed the order. We affirm.

The trial court took extensive evidence in the cause, much of which was directed to the question of adverse possession. Since we have concluded that the trial court was correct in quieting title in the Board by way of ancient grant, the evidence as to adverse possession is significant only insofar as it indicates continued possession of the site. We deem other evidence, indicating the existence of a deed, subsequently lost, to be of greater weight.

It is admitted that no deed has ever been recorded, conveying title to the three-quarters of an acre (the site) to the Board or its predecessors. However, two deeds, dated September 18, 1911, and one deed, dated February 23, 1912, appear in the chain of title. These deeds convey all, or partial interests, in the 80-acre tract and each one contains an exception: "except about three-quarters of an acre of said tract heretofore deeded for school purposes and now occupied by a schoolhouse." In 1931, the 80 acres were conveyed to plaintiff's family but the exception was not noted in that deed.

In addition to the deeds just mentioned, the Board introduced into evidence excerpts from the minutes of its predecessor for the years 1906 and 1907. These may be summarized as follows:

1. On August 4, 1906, a special election was held at the Hall Schoolhouse on the question of building a new schoolhouse. The proposition carried 13-to-5.

2. On August 7, 1906, resolution to submit to the voters whether to issue bonds in the amount of $1,100 for the purpose of buying a new schoolhouse and a site for it.

3. On August 18, 1906, a special school bond election carried.

4. On September 7, 1906, the "Directors of said district purchased three-fourths of an acre for $112.50."

5. On October 15, 1906, a motion carried to instruct the treasurer to refuse to pay for the schoolhouse site "until furnished with a warrantee deed conveying an absolute title."

6. On April 1, 1907, an audit of the treasurer's books disclosed everything "correct" except for Order No. 8 "for school site" which required the approval of the County Superintendent.

7. Undated but appearing after the April 1, 1907, entry: "The county superintendent advised the board to accept the deed for district No. 42, and accept the order No. eight."

It is not disputed that all of these referred to the site.

The county treasurer testified that the entire 80 acres, without any exception, were included in the tax bills paid in his office, but also testified that the tax bills in Schuyler County sometimes contain abbreviated descriptions.

The supervisor of assessments testified that since 1972 an exception of three-quarters of an acre appeared on the assessment roll for the 80 acres. No determination could be made for the years prior to 1972.

School officials testified that the schoolhouse on the site had been used for storage of school equipment since about 1957. It was stipulated that the building had not been used for classes since 1954.

The leading case in Illinois on the subject of ancient grant is *Trustees of Schools v. Lilly* (1940), 373 Ill. 431, 26 N.E.2d 489. Although factually inapposite to the instant case, its exposition of the law governs here. In *Lilly*, the trustees sued in ejectment and relied on the grant to the State of Illinois of section 16 in each township for school purposes as set forth in the Enabling Act of 1818 (3 Stat. 428, 430) and the absence of any patent to the section 16 in controversy as evidence that no conveyance would have been possible to the defendant's predecessor in title. Defendant, on the other hand, presented an unbroken chain of title back to 1865. The supreme court examined the evidence, and concluded that it supported the theory that a conveyance had been made by the State of Illinois to defendant's predecessor but, because of the unsettled condition of the times in 1865, it had not been recorded.

■■ In the course of its opinion in *Lilly*, the court pointed out the distinction between the presumption of ancient grant and the statute of limitations. Ancient grant is a rule of evidence and is a rebuttable presumption of fact. The evidence in rebuttal may be produced at any time without regard to the statute of limitations. On the other hand, when the statute of limitations is involved, as in a claim of adverse possession, once the period has run, "the presumption of fact crystallizes into a rule of

law and becomes irrebuttable, even if it could be conclusively proved not only that there was no grant, but that the original entry had been by way of trespass." 373 Ill. 431, 435, 26 N.E.2d 489.

The court went on to note that presumptions are inferences which common sense draws from a known course of events, and from circumstances which usually occur in similar situations.

■■ The authorities differ on what is required to raise a presumption of ancient grant. The Supreme Court of the United States has held that longstanding possession is sufficient in the absence of rebutting circumstances such as formal instruments, or records, or testimony. (*Fletcher v. Fuller* (1887), 120 U.S. 534, 30 L. Ed. 759, 7 S. Ct. 667.) However, while citing *Fletcher*, the *Lilly* court examined the corroborating circumstances with great care and considered the entire record in arriving at its conclusion. We therefore believe that the rule in this State is that the court must consider all the facts and circumstances in evidence of which longstanding possession would be only one.

■■ As applied to the instant case, the rule clearly and convincingly preponderates in favor of the Board. In addition to longstanding possession, which was only mildly controverted by the plaintiff, the Board presented unrebutted evidence of the minutes of its predecessor, the exceptions in the three deeds and the tax assessments since 1972. All of this leads to but one conclusion, namely, that the Board's predecessor obtained a conveyance which has since become lost and because of unknown circumstances at the time was never recorded.

Plaintiff relies on two Federal cases which dealt with Illinois law on the subject of ancient grant (*Superior Oil Co. v. Harsh* (E.D. Ill. 1941), 39 F. Supp. 467, and *Superior Oil Co. v. Harsh* (7th Cir. 1942), 126 F.2d 572), and a supreme court case interpreting these Federal cases (*Miner v. Yantis* (1951), 410 Ill. 401, 102 N.E.2d 524). The basis of these decisions is that when other evidence is lacking, there is a presumption that a school district took property by eminent domain and that under such conditions a school district would take only the minimal estate necessary for its purpose. In nearly all cases this would be only an easement or a determinable fee, and upon the premises being abandoned for school purposes, the underlying fee would revert to the then record owner.

We do not quarrel with these cases but find them inapposite. The circuit court of appeals' decision in *Superior Oil* found the entry on the land to be permissive rather than an outright grant. In view of these circumstances, there could be no presumption of ancient grant, and in view of the permissive nature of the entry, it could not be hostile, thereby ripening into an adverse title. No such circumstances are present in the instant case. No evidence of permissive entry of any sort was introduced.

In *Miner*, the supreme court noted that eminent domain was not the

exclusive manner of taking possession and that a school district could obtain a fee simple title, but that when evidence to the contrary was lacking, a school district would take only the quantum of estate necessary for its purposes. In the instant case, there is no evidence of an eminent domain proceeding, before or after 1906, and on the contrary the evidence indicates that the district was demanding a "warrantee" deed.

■■ Plaintiff argues further that the lost deed may have contained such a restriction as to create a determinable fee, *i.e.*, "for school purposes" or some such similar language, as indicated in the later exceptions. In *Scheller v. Trustees of Schools* (1978), 67 Ill. App. 3d 857, 384 N.E.2d 971, the appellate court held that the phrase was not a limitation on the fee but was descriptive of the necessity for eminent domain. We find *Scheller* analogous and believe that the simple phrase, "for school purposes," under the circumstances of this case would be insufficient to create a determinable fee.

Even if such a phrase were sufficient, plaintiff's right of entry would be defeated by section 4 of "An Act relating to Rights of Entry or Re-entry for breach of condition subsequent and possibilities of reverter" (Ill. Rev. Stat. 1979, ch. 30, par. 37e).

The trial court was correct in holding that the Board's predecessor acquired title by ancient grant. Since this be true, we need not address the contentions regarding adverse possession.

Although plaintiff's notice of appeal incorporates the finding against her on her complaint in ejectment, that matter has not been briefed nor argued in this court. It follows from our holding that the Board obtained title by ancient grant that plaintiff's predecessor could have had no title to convey to her and plaintiff and her predecessors made no claim of adverse possession against the Board. Therefore, the trial court was likewise correct in its ruling on plaintiff's complaint. *Thompson v. McGrue* (1954), 3 Ill. 2d 168, 119 N.E.2d 773.

The order of the circuit court of Schuyler County is affirmed.

Affirmed.

CRAVEN and TRAPP, JJ., concur.