2015 IL App (1st) 123210

SECOND DIVISION
September 22, 2015

Nos. 1-12-3210 & 1-12-3211 (Consolidated)

| | | |
|---|---|---|
| THE HERTZ CORPORATION,<br>a Delaware Corporation, | ) <br> ) | Appeal from the<br>Circuit Court of |
|       Plaintiff-Appellee, | ) <br> ) | Cook County |
| v. | ) <br> ) | No. 10 CH 51118 |
| CITY OF CHICAGO and DAN WIDAWSKY, | ) | |
| Not Individually, But as City Comptroller, | ) | Honorable |
| Department of Finance, | ) | Daniel T. Gillespie, |
|       Defendants-Appellants. | ) | Judge Presiding. |

| | | |
|---|---|---|
| ENTERPRISE LEASING COMPANY OF<br>CHICAGO, LLC, d/b/a Enterprise<br>Rent-a-Car, Alamo Rent-a-Car and<br>National Car Rental, a Delaware Limited<br>Liability Company, | ) <br> ) <br> ) <br> ) <br> ) | Appeal from the<br>Circuit Court of<br>Cook County |
|       Plaintiff-Appellee, | ) <br> ) | |
| v. | ) <br> ) | No. 11 L 50840 |
| CITY OF CHICAGO and DAN WIDAWSKY, | ) | |
| Not Individually, But as City Comptroller, | ) | Honorable |
| Department of Finance, | ) | Daniel T. Gillespie, |
|       Defendants-Appellants. | ) | Judge Presiding. |

      PRESIDING JUSTICE PIERCE delivered the judgment of the court, with opinion.
Justices Neville and Harris concurred in the judgment and opinion.

**OPINION**

Nos. 1-12-3210 & 1-12-3211 (Consolidated)

¶ 1    Since early 1990, the City of Chicago (City) has imposed a tax on the use of all leased personal property within city limits. Chicago Municipal Code § 3-32-030(A) (added Dec. 15, 1992). In 2011, the City's department of revenue adopted a ruling intended to serve as a guide for the application of the tax on the use of vehicles leased by City residents from rental agencies located within three miles of the city's border. Personal Property Lease Transaction Tax Second Amended Ruling No. 11 (eff. May 1, 2011). Plaintiffs, Enterprise Leasing Company of Chicago (Enterprise) and the Hertz Corporation (Hertz), filed separate actions against defendants, the City of Chicago and the City Comptroller, seeking declaratory and injunctive relief against the City's imposition of a tax on "car-rental transactions" that occur within three miles of the city's border. The cases proceeded in tandem before the circuit court. On cross-motions for summary judgment, the circuit court granted summary judgment in favor of Enterprise.[1] The circuit court declared Ruling 11 facially unconstitutional and permanently enjoined the City from enforcing the ordinance and the ruling "against plaintiff[s] with respect to *** short-term vehicle rental transactions occurring outside the City of Chicago." For the reasons that follow, we reverse the judgment of the circuit court, vacate the permanent injunction and enter summary judgment in favor of defendants.

¶ 2                         BACKGROUND

¶ 3    The relevant facts are not in dispute. The authority for the City's tax on the use of short-term car rentals in the city by Chicago residents, where the lease occurs within three miles of its border, is derived from a general use tax for leased personal property found in section 3-22-030(A) of the Chicago Municipal Code. Section 3-22-030(A) imposes an 8% tax (1) on the rental

_____

[1] We refer throughout this opinion to appellees jointly as Enterprise because Enterprise filed the motion for summary judgment at issue and prepared the response brief to this appeal.

2

of personal property within the city, and (2) on the use of personal property in the city that is leased or rented outside the city. Chicago Municipal Code § 3-32-030(A) (added Dec. 15, 1992). This tax on leased personal property is levied in addition to all other taxes imposed. Chicago Municipal Code § 3-32-010 (added Dec. 15, 1992). The ordinance applies to lessors that maintain an office or principal place of business in the city or to lessors that are otherwise required to collect the tax imposed by the ordinance. Chicago Municipal Code § 3-32-090 (added Dec. 15, 1992). The tax is imposed on the lessee and is due at the time of payment to the lessor. In the event the lessee does not remit the tax, the lessor is required to remit the tax to the city. Chicago Municipal Code §§ 3-32-030(B), 3-32-070(A) (added Dec. 15, 1992). If the lessor fails to collect or remit the use tax, the lessor is liable for the amount of tax plus interest and penalties. Chicago Municipal Code § 3-32-070(A) (added Dec. 15, 1992).

¶ 4      The ordinance authorizes the department of revenue (Department) (now the City Comptroller) to issue rules and regulations for the administration and enforcement of the ordinance. Chicago Municipal Code § 3-32-120 (added Dec. 15, 1992). In that regard and relevant to this case, in 2011 the Department issued a second amended ruling to explain the administration and enforcement of the general city use tax as applied to "suburban [short-term car rental] locations within 3 miles of Chicago's border." Personal Property Lease Transaction Tax Second Amended Ruling No. 11 (Ruling 11) (eff. May 1, 2011). By its terms, Ruling 11 applies to car rentals "to Chicago residents, on or after July 1, 2011, from suburban locations within 3 miles of Chicago's border *** by motor vehicle rental companies doing business in the City." *Id.* Under Ruling 11, a motor vehicle company is " 'doing business' in the City" when it has a rental location in the city or "regularly rent[s] vehicles that are used in the City, such that the company is subject to audit by the Department." *Id.* § 3. Ruling 11 applies only to car rental

3

agencies that do business in Chicago and also have agencies in the suburbs located "within 3 miles of Chicago's borders." *Id*. § 1. Ruling 11 cites the ordinance and states that the ordinance allows certain exemptions, including an exemption for leased property that is used outside of the city more than 50% of the time. *Id*. § 2(c). Ruling 11 also reflects that the ordinance puts the burden of proving an exemption on the tax payer or tax collector. *Id*. Lastly, Ruling 11 cites the ordinance in stating that the ordinance requires the lessor to maintain books and records of every taxable transaction for a period of at least five years. *Id*. § 2(e).

¶ 5    Section 3 of the Ruling provides guidance to car rental companies doing business in the city and that have rental facilities within three miles of the city's border that, when leasing to Chicago residents intending to use the car primarily in the city, the lessor should maintain records in the event of an audit. *Id*. § 3. Ruling 11 contains a policy statement that the Department will not audit rental locations beyond three miles of the city border, excluding O'Hare field, and it will provide prior notice of a change in policy. *Id*. § 4. Ruling 11 also contains a safe harbor provision: rather than maintainin*g* records of the city residents' intended use of the vehicle, rental car companies subject to the tax can remit a tax "equal to the tax rate multiplied by 25% of its rental charges at such locations, to customers who are Chicago residents." *Id*. § 5.

¶ 6    If audited, absent any written proof to the contrary, where a suburban location leases to a Chicago resident, the Department will "assume" that the lessee used the vehicle in the city. *Id*. The address shown on the lessee's driver's license determines whether the lessee is a Chicago resident. Conversely, where a suburban location leases to a driver whose license does not show a Chicago address, the Department will "assume" that the rental is to a non-Chicago resident and the vehicle was not used in the city. *Id*. Ruling 11 provides that where the lessor, as part of its

rental agreement or as part of its records, obtains a response to the following statement from the lessee, the Department will accept this statement as sufficient proof of use:

"_____          By initialing this space you are notifying us that you plan to use this vehicle 50% or more of the time (including garaging) in the City of Chicago.

_____          By initialing this space you are notifying us that you plan to use this vehicle more than 50% of the time (including garaging) outside the City of Chicago." *Id*. § 3.

¶ 7     Plaintiffs, national car rental companies, operate rental car facilities in Chicago and the surrounding suburbs. Enterprise operates several different vehicle rental companies[2] and estimates it has 26 rental car locations in the three-mile tax zone. Plaintiffs are subject to the collection and remittance requirements of this tax.

¶ 8     Enterprise's current rental agreement, iterated in fine print, informs the lessee that a city tax may apply if the vehicle is used primarily in the city and that the tax will not apply if the vehicle is not primarily used in the city. The rental agreement advises the lessee to request a tax form for remittance of the tax directly to the City should the primary use be in the city. In 2011, Enterprise sought guidance from the Department to ascertain whether this information contained in its current agreement was sufficient to support an exemption for car rentals leased from outside of Chicago. Enterprise argued that given this provision in its lease agreement, where the lessee remains silent and does not request a tax form to indicate primary use in the city, it should be inferred that the tax was not incurred. Enterprise contended that the information contained in the agreement, and the response (or lack of response) from the lessee, is a sufficient basis to

---

[2] Enterprise does business as Enterprise Rent-a-Car, Alamo Rent-a-Car and National Car Rental.

determine actual usage and whether a tax was due. The City disagreed reasoning that silence by a Chicago resident lessee relating to the intended use of the vehicle does not constitute a claimed exemption by the lessee and that a Chicago resident lessee should be required to expressly inform Enterprise whether the intended use of the car will be primarily in Chicago for the exemption to apply.

¶ 9    Unable to resolve the dispute, Enterprise and Hertz filed these actions against the City seeking declaratory and injunctive relief to stop enforcement of the ordinance as authorized by Ruling 11. Plaintiffs argued that Ruling 11 is an extraterritorial exercise of Chicago's home rule authority; Ruling 11 violates the scope of the ordinance; and Ruling 11 violates the due process clause and commerce clause of the United States Constitution. Plaintiffs argue that Ruling 11 improperly imposes the tax on all short-term car rentals outside of Chicago where the lessee's driver's license shows a Chicago residence; the ruling administratively presumes all such non-Chicago short-term rentals are taxable without regard to evidence of use in Chicago; and the ruling impermissibly requires that plaintiffs change their rental agreements to contain the Department's approved statements of use.

¶ 10    The City moved to dismiss the actions, which the circuit court denied. Enterprise filed a motion for summary judgment. Defendants responded by filing a cross-motion for summary judgment. After briefing and hearing, the circuit court granted summary judgment in favor of Enterprise and enjoined the City from enforcing the ordinance and Ruling 11 "as applied to *** short-term vehicle rental transactions occurring outside the City of Chicago." The circuit court found that: (1) "Ruling 11 is an exercise of improper extraterritorial taxing authority" of the City's home rule authority; (2) "impermissibly expands the scope of the [ordinance]"; and (3) violates the due process clause and commerce clause of the United States Constitution.

Subsequently, the circuit court entered an order enjoining the enforcement of the ordinance and Ruling 11 against Hertz based on the earlier summary judgment ruling in favor of Enterprise. Thereafter, defendants timely filed this appeal.

¶ 11                                    ANALYSIS

¶ 12     Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). In the present case, the facts are not in dispute and only questions of law are presented. We review the circuit court's entry of summary judgment *de novo*. *Hartz Construction Co. v. Village of Western Springs*, 2012 IL App (1st) 103108, ¶ 23.

¶ 13     Plaintiffs' facial challenge to Ruling 11 is premised on the argument that Ruling 11 expands the ordinance to permit the extraterritorial taxation of short-term rental car transactions that occur outside the city limits of Chicago but within a three mile radius of its border. Plaintiffs contend that Ruling 11 exceeds the City's home rule authority, exceeds the scope of the ordinance and violates the federal due process and commerce clauses. Plaintiffs' facial challenge is grounded on its characterization of the tax as a transaction tax.

¶ 14     Defendants disagree with plaintiffs' characterization of the tax as a transaction tax and argue that the ordinance imposes a use tax on Chicago residents who lease vehicles from suburban locations and use the vehicles primarily (more than 50%) in Chicago.

¶ 15     Although, the ordinance is titled "Personal Property Lease Transaction Tax" we look at the substance of the tax, not its title, to determine its meaning and purpose. *City of Chicago v. Wilshire*, 243 Ill. 123, 127 (1909) ("in order to determine the meaning of an ordinance the whole of it must be examined, and one part may be considered for the purpose of explaining the meaning of another"). Here, the meaning and purpose of the ordinance is clear. Part 1 imposes a

tax on any lessee that enters into any lease transaction in the city irrespective of where the leased property is used. Chicago Municipal Code § 3-32-030(A) (added Dec. 15, 1992). Part 2 imposes a tax on lessees who use leased personal property more than 50% of the time in the city irrespective of where the lease transaction took place. *Id*. Therefore, section 3-32-030(A) of the Chicago Municipal Code by its terms, is a tax on the privilege of *using* leased personal property inside the city regardless of where the lease transaction occurred and, therefore, is a use tax, not a transaction tax. See *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 3 (a "[u]se tax is imposed 'upon the privilege of using *** tangible personal property' " in the taxing jurisdiction (quoting 35 ILCS 105/3 (West 2010))); see *First Access Material Handling v. Wish*, 297 Ill. App. 3d 396, 405 (1998) (finding that a tax on the privilege of using property inside the city of Chicago, such as section 3-32-030 of the Chicago Municipal Code, is a use tax).

¶ 16    Plaintiffs concede that the City has the power to tax the use of leased personal property within the city. What plaintiffs dispute is the City's power to tax a transaction that occurred outside its border and its authority to impose a burden to collect and remit the tax on entities operating outside of the city's border. We review the constitutionality of a municipal ordinance *de novo*. *Carter v. City of Alton*, 2015 IL App (5th) 130544, ¶ 18.

¶ 17                                      I. Home Rule

¶ 18    Plaintiffs argue that Ruling 11 exceeds the City's home rule authority by taxing non-Chicago short-term vehicle lease transactions. The crux of plaintiffs' arguments is based on the contention that the challenged tax is imposed on the lease transaction.

¶ 19    The City of Chicago is a home rule municipality which, pursuant to the Illinois Constitution of 1970, has the power to perform "any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health,

safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a). The chief objective of home rule is to ensure that local governments can tax and regulate within their borders. See *Mulligan v. Dunne*, 61 Ill. 2d 544, 548 (1975). These powers are broad and should be construed liberally (Ill. Const. 1970, art. VII, § 6(m)). A locality's taxes and regulations must "pertain[ ] to its government and affairs." *Mulligan*, 61 Ill. 2d at 548. However, such power cannot reach outside of the locality's boundaries to impose taxes "extraterritorially." *Id.* at 558.

¶ 20    Ordinances are presumed to be constitutional. *Carter*, 2015 IL App (5th) 130544, ¶ 18. The challenging party bears the burden of overcoming that presumption and demonstrating that the ordinance is a " 'clear constitutional violation.' " *Id.* (quoting *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20). The agency charged with the administration of a municipal ordinance has the authority to adopt interpretative rules to guide those involved in the assessment procedure and to ensure uniform enforcement of the ordinance. See *O'Connor v. A&P Enterprises*, 81 Ill. 2d 260, 269 (1980). Administrative rulings, like ordinances, are presumed constitutional and, if reasonably possible, are to be construed to uphold constitutionality. *Jackson*, 2012 IL App (1st) 111044, ¶ 20; *People v. Molnar*, 222 Ill. 2d 495, 508 (2006). A challenge based on facial invalidity has an especially high bar because the challenger has to establish that "no circumstances" exist under which the enactment would be valid. *Carter*, 2015 IL App (5th) 130544, ¶ 20; *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20.

¶ 21    Plaintiffs contend that this tax fails because the City does not have the authority to tax non-Chicago short-term vehicle lease transactions where no part of the transaction occurs in Chicago. We reject this argument because here, under the ordinance the taxable event is the use of the rental car in Chicago, therefore, the City has power to tax the use as delineated in Ruling

9

11.

¶ 22    It is clear that plaintiffs misunderstand the taxable event described in the ordinance. As discussed above (*supra* ¶ 15), part 2 of the ordinance does not impose a tax on the lease transaction, rather the use tax is triggered when the leased personal property is used in Chicago. Ruling 11 provides guidance to rental car agencies that do business in Chicago, and also have rental locations within three miles of Chicago's border, that the primary use of the rental car in the city, by City residents, is subject to the use tax. Clearly, the City is not imposing a tax on "non-Chicago transactions" but rather on the primary use of the rental car by City residents in the city. *Supra* ¶ 15.

¶ 23    The justification for a use tax is twofold. First, a use tax is warranted by the taxpayer's receipt of concomitant benefits such as "public roads, police protection, a judicial system and all the other *** usually forgotten advantages conferred by the [City's] maintenance of a civilized society." (Internal quotation marks omitted.) *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 429 (1996). Second, a use tax tends to operate as a tariff which protects "the state's revenues by taking away from [its] inhabitants the advantages of resort to untaxed out-of-state purchases." *Miller Brothers Co. v. State of Maryland*, 347 U.S. 340, 343 (1954). This observation equally applies to a municipality: the use tax operates as a tariff protecting city revenue by taking from city residents the advantage of resorting to a nearby suburban location of a national rental agency to lease a vehicle in order to avoid a use tax otherwise imposed were the vehicle leased within the city itself.

¶ 24    Another rationale for a use tax is a *quid pro quo* whereby the lessee yields to the tax in exchange for the municipality's services such as police, fire, hospitals, etc. See *City of Evanston v. Create, Inc.,* 85 Ill. 2d 101, 115 (1981). This protection is applicable here because plaintiffs

rent cars to Chicago residents from nearby locations just outside of Chicago and these residents use the cars primarily in Chicago and unquestionably benefit from the City's numerous municipal services.

¶ 25    Rental cars are somewhat unique in that it is the use of tangible personal property that may be taken into the limitless taxing jurisdiction and benefit from a municipality's services. Chicago residents using plaintiffs' vehicles use city streets and receive city services and without imposition of this use tax they would not contribute to defraying a part of the associated costs of road maintenance and public safety. The lease of a vehicle in Chicago triggers an 8% tax under the ordinance for the same reason that the use of the leased commodity, the car, will be used in the city and benefit from city services. It is plaintiffs' personalty that is used primarily in the city that benefits from the city's transportation system, roadway services, police and fire protection services in the event of an accident or theft of plaintiffs' vehicle. Therefore, the City has an interest in capturing revenue that would otherwise escape the city if residents could go to nearby suburban locations to avoid the 8% use tax while using the rental car primarily in Chicago.

¶ 26    Next, plaintiffs argue that although they "do business" in the City, the City does not have jurisdiction over their suburban rental locations to require those locations to collect and remit the use tax. This position is contrary to established case law to the effect that entities that transact business outside the taxing jurisdiction, with residents of the taxing jurisdiction, can be required to collect and remit the taxing jurisdiction's use tax when the item will be used within the taxing jurisdiction. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410 (1996) (Illinois company that purchased furniture from an out-of-state retailer, which was delivered to Illinois for use, was required to pay a use tax and the foreign retailer was required to collect and remit said tax). Simply put, where the taxable event occurs within the taxing jurisdiction, it is not an

extraterritorial exercise of a municipality's home rule powers to impose tax-collection duties on a nonresident entity that does business within the municipality. *Illinois Wine & Spirits Co. v. County of Cook*, 191 Ill. App. 3d 924, 927-28 (1989) (quoting *Commercial National Bank of Chicago v. City of Chicago*, 89 Ill. 2d 45, 58 (1982), and citing *Mulligan*, 61 Ill. 2d 544).

¶ 27    In this case, the ordinance provides that it applies to entities doing business in Chicago and to entities otherwise subject to the tax. Chicago Municipal Code § 3-32-090(A) (added Dec. 15, 1992). Plaintiffs do not dispute that they have multiple rental locations within the city of Chicago and "do business" in the city. Therefore, plaintiffs are permissibly subject to the duty to collect and remit the tax in accordance with the ordinance and Ruling 11.

¶ 28    In addition, the situs of the taxable activity (primary use of the vehicles) occurs within the taxing jurisdiction. Plaintiffs dispute that the taxed activity is the use of the vehicle and contend that the tax will be applied by the City on all tangible personal property lease transactions that occur within three miles of the city's border, regardless of where the personalty is used. We find that there is no support for plaintiffs' contention where the ordinance and Ruling 11 state the opposite. Section 3-32-050(A)(1) provides that personal property leased outside the city, and used primarily outside the city, will be exempt from the tax. Chicago Municipal Code 3-32-050(A)(1) (added Dec. 15, 1992) (the first exemption listed in the ordinance provides: "if the [rented] property is primarily used (more than 50 percent) outside the city"). In section 2(c), titled "[e]xemption for use primarily outside the City," Ruling 11 cites section 3-32-050(A)(1) as the basis for this exemption. Ruling 11 § 2(c). Hence, the City has taken a targeted application of the tax and it clearly does not impose the use tax on all vehicles leased from these suburban locations because it exempts leased vehicles that are used primarily outside the city's border.

¶ 29    If the tax was imposed on all rentals that originate outside of Chicago, the ordinance

12

would not focus on whether the lessee had a Chicago residence shown on his or her driver's license and whether the intended use would be more than 50% in the city. The ordinance would simply provide that any rental car agency that does business in the city is also subject to a tax on any car it leases from any facility located within three miles of the city. This is not what this ordinance or Ruling authorizes. The tax is not on the act of entering into a lease transaction. It is a tax on the privilege of using a leased vehicle primarily in the city, paid by a city resident, with burden of collection placed on the lessor at the time of payment by the lessee. The tax is imposed either where the lessee confirms an intention of primary usage in Chicago or where the rental car company fails to rebut a presumption of primary usage through records it is required to maintain. Under Ruling 11, if audited, the City affirmatively agrees to accept, at face value, a lessee's written acknowledgment of intended use made at the time of rental in determining whether the tax is due.

¶ 30    Under the ordinance, the location of the rental car's primary use gives rise to the tax. The plain language of the ordinance identifies the taxable activity as the use of the leased tangible personal property within the city. Ruling 11 explains that the tax will be applied to the use of the rental car by city residents primarily within the city. Plaintiffs have a sufficient connection to the city to warrant designation as the City's agent for collection of the use tax. The imposition of the collection burden on plaintiffs is minimal at best and is a practical method of collecting the tax from the city resident who is responsible for the tax in the first instance. In fact, Enterprise's rental agreement recognizes that vehicle usage primarily in Chicago, even when the vehicle is rented outside of Chicago, triggers the City's use tax because the agreement informs the customer/renter that this tax may apply to their use of the vehicle and the lessee should request a tax return to facilitate payment of the tax to the City.

¶ 31    Plaintiffs do not dispute that the ordinance properly levies the tax on the use of its leased tangible personal property in the city and they do not dispute that the primary use of their vehicles rented from non-Chicago locations in Chicago may be subject to the tax. Plaintiffs dispute the City's jurisdiction to impose a duty on plaintiff's suburban operations to either obtain information from their customers as to use and to require plaintiffs to collect and remit the tax, or to impose a duty on plaintiffs to pay the tax plus penalties for failure to adhere to the ordinance. However, the nexus between the plaintiffs, the taxable activity and the City is reasonable and the connection is obvious and clear. Plaintiffs "do business" in the city, they are otherwise required to collect and remit the tax and the activity taxed is the primary use of the rental vehicle in the city, as evidenced by the statement of intent by the lessee that 50% or more of the use will occur in the city. Therefore, we find Ruling 11 is not an unauthorized extraterritorial exercise of the City's taxing authority and plaintiffs have not overcome the presumed constitutionality of the ordinance and Ruling 11.

¶ 32                                   II. Scope Challenge

¶ 33    Plaintiffs also argue that Ruling 11 exceeds the scope of the ordinance because it imposes taxes on rentals that occur outside of Chicago, it requires plaintiffs to keep records regarding vehicle use and includes an administrative presumption not found in the ordinance.

¶ 34    "[O]rdinances adopted by the City of Chicago in the exercise of its home rule power" are presumed constitutional and are "liberally construed to achieve [their] legislative purpose." *National Pride of Chicago, Inc. v. City of Chicago*, 206 Ill. App. 3d 1090, 1101 (1990). Administrative agencies have the authority to adopt rules interpreting the legislation to guide assessment and ensure uniform enforcement. *O'Connor v. A&P Enterprises*, 81 Ill. 2d 260, 269 (1980). Those agencies are given "substantial deference" so long as "they fall within the

14

parameters of the statute or ordinance which the ruling purports to interpret." *National Pride of Chicago*, 206 Ill. App. 3d at 1101; see *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 16. To determine the scope of an ordinance we determine legislative intent beginning with the language of the ordinance itself and we then consider the purposes to be attained by the ordinance. *Canteen Corp. v. Department of Revenue*, 123 Ill. 2d 95, 104 (1988). "We give deference to the Department's interpretation of an ordinance it administers ***." *DTCT, Inc. v. City of Chicago Department of Revenue*, 407 Ill. App. 3d 945, 952 (2011).

¶ 35    The ordinance at issue authorizes the comptroller to "adopt, promulgate and enforce rules and regulations pertaining to the administration and enforcement" of the ordinance. Chicago Municipal Code § 3-32-120 (added Dec. 15, 1992). The ordinance broadly imposes a tax on leased personal property which is rented in the city or primarily used in the city. Chicago Municipal Code §§ 3-32-030(A), 3-32-050(A)(1) (added Dec. 15, 1992). The ordinance imposes a use tax on any leased personal property that is used in the city. Ruling 11 explains that it is city policy to only impose the tax on city residents who use the leased vehicle primarily in the city. Thus, the guidance provided in Ruling 11 is more restrictive in its intended application than the ordinance allows. Specifically, Ruling 11 explains that the City will only apply the tax when city residents lease vehicles from locations "within 3 miles of Chicago's border" and primarily use the vehicle in Chicago. Ruling 11 § 1. We find the guidance provided in Ruling 11 does not exceed the scope of the ordinance on this basis.

¶ 36    Next, plaintiffs suggest that they will be unduly burdened in collecting the tax and keeping records regarding use of rental vehicles that will require a change to their rental agreements in order to comply with Ruling 11. There is nothing unreasonable in requiring plaintiff to maintain records that it already obtains from its lessees (customer driver license

information) and to obtain the lessees written response (check mark) to a question on intended use of the vehicle. If the plaintiffs' chose not to request and retain such information they run the risk of being unable to sufficiently claim an exemption and be assessed the tax and penalties or seek protection under the safe harbor provision of Ruling 11. We do not consider these obligations to collect and maintain written evidence as proof of a claimed exemption in the case of an audit unreasonable. See *Mulligan*, 61 Ill. 2d at 558; see also *Performance Marketing Ass'n v. Hamer*, 2013 IL 114496, ¶ 4.

¶ 37     Furthermore, contrary to plaintiffs' argument, Ruling 11 does not require the plaintiffs to keep certain records, rather the ruling provides guidance in the event no evidence of use is available. It is the ordinance itself that requires lessors to retain accurate books and records of "each transaction or activity requiring that person to collect and remit or to pay the tax imposed by this chapter" for inspection by the department. Chicago Municipal Code § 3-32-110 (added Dec. 15, 1992). Any lessor claiming an exemption has the burden of proving entitlement to the exemption. Chicago Municipal Code § 3-32-050(B) (added Dec. 15, 1992). All books and records reflecting each transaction or activity requiring the lessor to collect and remit the tax must be retained for five years. Chicago Municipal Code § 3-32-110 (added Dec. 15, 1992). Ruling 11 provides an alternative to this obligation by permitting the lessor to take the "safe harbor" exemption, if they do not wish to keep such records. Ruling 11 § 5.

¶ 38     In addition, the ordinance already directs that plaintiffs' leases contain certain necessary content, including the date of the lease, the name of the lessor and lessee, the personal property leased, the duration of the lease and payment period and amount of each lease or payment. Chicago Municipal Code § 3-32-100 (added Dec. 15, 1992). Ruling 11 simply provides the lessors with guidance on how to interpret the ordinance and what documents or representations

the City may accept as to the intended use of the rental property. Therefore, the "undue burden" that plaintiffs claim is no greater than that already placed on them under the ordinance.

¶ 39     Plaintiffs also argue that Ruling 11 exceeds the scope of the ordinance because it contains an administrative presumption, not found in the ordinance, that city residents will use the rented vehicles primarily in the city. Plaintiffs argue that the City cannot presume that a Chicago resident who rents a car within three miles of the city will primarily use the vehicle in Chicago. We disagree.

¶ 40     Ruling 11 is a guideline to explain the City's policy regarding enforcement of the ordinance and the method for establishing an exemption. The Department is permitted to consider matters of administrative convenience and expense of collection in enforcing the tax. *Williams v. City of Chicago*, 66 Ill. 2d 423 (1977). "A presumption is an inference which common sense draws from known course of events or from circumstances usually occurring in such cases." *Winston v. Sears, Roebuck & Co.*, 88 Ill. App. 2d 358, 363 (1967) (quoting *Trustees of Schools of Tp. No. 8 v. Lilly*, 373 Ill. 431, 438 (1940)). "Where two facts are so related to each other that in reason and human experience the existence of one may fairly be inferred from the other, the law may declare that proof of one shall be prima facie evidence of the existence of the other." *Id*. (quoting *Johnson v. Pendergast*, 308 Ill. 255, 261 (1923)). We find that reason and human experience allows for a presumption that, where a Chicago resident enters a short-term rental agreement with a national car rental company by leasing the vehicle at a nearby suburban location, that resident will use that vehicle more than 50% of the time in Chicago, unless that resident makes a check mark on the rental agreement indicating that he does not so intend. *Id.* Clearly, nothing in the ordinance limits the plaintiffs from presenting other credible evidence to defeat the denial of a claimed exemption as a result of an audit. Further, the plaintiffs can easily

avoid invocation of the presumption by obtaining an indication from the customer that the intended use will not be primarily in Chicago, thus escaping the tax, and satisfying the city that plaintiff is not responsible for the tax or resultant penalties.

¶ 41 Plaintiffs cite to an out of state case (*Town Fair Tire Centers, Inc. v. Commissioner of Revenue*, 911 N.E.2d 757 (Mass. 2009)) where the assessment of a use tax based solely on an administrative presumption of use was reversed because the taxing statute as written required a showing of actual use as a "necessary prerequisite" to taxation. The tax on short-term car rentals here, poses a different situation and the specific facts of *Town Fair* as they apply to the Massachusetts statute do not apply here. Ruling 11 provides the rental car agencies with guidance on how to establish an exemption. Ruling 11 informs the plaintiffs that a claimed exemption from the tax will be allowed if it provides a document that substantially states that the lessee intends to use the vehicle primarily outside the city. Otherwise, absent documentary evidence of the lessee's intended use of the vehicle, no exemption will be allowed and the tax will be deemed due. Ruling 11 provides the plaintiffs with a sample question about usage that, if answered will be considered sufficient to support an exemption. Ruling 11 § 3. Only in the *absence of other documentation* to establish an exemption, will the City "assume that a customer who is a Chicago resident (according to the customer's driver's license), when renting from such a location, will use the vehicle in the City." *Id*. Ruling 11 is clear that this presumption of use is only exercised "[i]n the event of an audit, absent written proof to the contrary." *Id*.

¶ 42 This is a rebuttable presumption of use that can be overcome by evidence of actual use and disputed through the administrative process. *Golf Leasing, Inc. v. Hamer*, 2012 IL App (1st) 102785, ¶ 33 (during an administrative adjudication a party seeking to establish tax-exempt status must present evidence in order to prevail against an assessment of a tax deficiency); see

*First Access Material Handling*, 297 Ill. App. 3d at 396 (judicial review of an administrative decision to assess a tax on the use of personal property in Chicago although the property was leased outside of the city involved a review of rental records to establish entitlement for a tax exemption).

¶ 43    Plaintiffs admit that all lessees are required to show plaintiffs their driver's license in order to rent the vehicles. The lessee's driver's license contains their address, usually it is the address of residence. Once the rental agency is routinely provided a driver's license that shows the city of residence, the agency is on notice that the lessee may be subject to the use tax. In this circumstance, it is not unreasonable for the City to require plaintiffs, who have the obligation to collect and remit the tax, to ask the Chicago resident whether it is their intention to primarily use the vehicle in the city to ascertain whether the tax applies and whether it is obligated to collect and remit payment.

¶ 44    Plaintiffs argue the presumption may cause the City to impose the tax where a car is rented and used outside of the city. This argument is contrary to the plain reading of Ruling 11 which sets forth the City's policy that it will not tax all suburban leases or where the use is primarily outside the city. Ruling 11 § 2(c). To the extent the plaintiffs contend this policy may change, the City has stated that should Ruling 11 be amended, changed or there is a change in city policy, the City will provide "at least 120 days' advance written notice, and the change will be prospective only." *Id.* § 4. We have been provided with no evidence that this is not the case and we are confident that plaintiffs will be alert to any change in city policy in this regard or if the city acts contrary to the ruling of this court. We do not consider hypothetical situations or issue decisions on matters which have not and may never occur. *Mulligan*, 61 Ill. 2d at 558.

¶ 45    Although the ordinance does not specifically delineate this presumption, "[a]bsolute

criteria whereby every detail necessary in the enforcement of a law is anticipated need not be set forth in the ordinance itself." (Internal quotation marks omitted.) *Id*. at 553. The department of revenue routinely develops procedures to enforce or administer taxes (*O'Connor*, 81 Ill. 2d at 266) which are entitled to "substantial deference" (*Katz v. City of Chicago*, 177 Ill. App. 3d 305, 311 (1988)). Administrative officers must be given reasonable discretion for their methods in enforcing a use tax. *Clark Oil & Refining Corp. v. Johnson*, 154 Ill. App. 3d 773, 778 (1987). Based on the above, we find that plaintiffs have not overcome their burden to show that Ruling 11 impermissibly exceeds the scope of the ordinance.

¶ 46                     III. Challenge under United States Constitution

¶ 47     Plaintiffs also challenge the constitutionality of Ruling 11 arguing that Ruling 11 violates the Commerce Clause of the United States Constitution (U.S. Const., art. I, § 8) because there is no minimum connection between the City and rental car transactions occurring out of state, *e.g.*, Indiana. Plaintiffs argue that although Ruling 11 does not currently include Indiana, it could be expanded to included Indiana agencies in violation of the commerce clause. However, plaintiffs did not plead or at any time argue, that they have any Indiana rental facilities located within three miles of the city that are subject to the tax. Therefore, plaintiffs' argument is speculative and we will not issue an advisory opinion or give legal advice as to a potential future event. *Klehr v. Illinois Farmers Insurance Co.*, 2013 IL App (1st) 121843, ¶ 9.

¶ 48     Next, plaintiffs argue that Ruling 11 violates the federal due process clause (U.S. Const., amend. XIV, § 1). Plaintiffs contend that the City does not have minimum contacts over non-Chicago short-term rental transactions where the vehicle that is leased outside the City is not leased specifically for use in Chicago and there is no certainty that use will occur in Chicago. Defendants respond arguing that plaintiffs do not have standing to assert this challenge because

the ordinance does not impose a tax on interstate activities.

¶ 49    Under the due process clause, there must be a "definite link" between the state and the object of the tax. *Irwin Industrial Tool Co. v. Department of Revenue*, 238 Ill. 2d 332, 342 (2010). The link "must be a connection to the activity itself, rather than [merely] a connection to the actor the [s]tate seeks to tax." *Allied-Signal, Inc. v. Director, Division of Taxation*, 504 U.S. 768, 778 (1992).

¶ 50    Plaintiffs do not argue that the City lacks the power to tax its residents for use of leased tangible personal property within the City. Rather, plaintiffs argue that the City cannot tax transactions occurring outside of its borders. We addressed this argument earlier and we again find plaintiffs' argument has no merit. Plaintiffs' assertion is that the City cannot tax transactions outside of its borders in contravention of the federal due process clause. However, under the ordinance, the taxable event is not a "transaction," but rather it is the primary "use" of leased personal property in the city. *Supra* ¶ 15. Ruling 11, a guide to the City's policy in enforcing the ordinance, confirms that the link between the tax and the taxable event is the use of the leased personal property primarily in the city. Ruling 11 § 2(a), (c). Contrary to plaintiffs' argument, under Ruling 11, the City is not imposing a tax on extraterritorial transactions because the taxable event, *i.e.*, the use, occurs within the city's borders. Therefore, plaintiffs do not have standing to bring this challenge because the ordinance imposes a tax on the "use" of the leased personal property in Chicago by Chicago residents and not the "rental transaction" itself.

¶ 51                              CONCLUSION

¶ 52    This appeal involves a pure question of law. Plaintiffs' have no remaining claims or matters to be decided by the circuit court and, under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994), we have the power to "enter any judgment *** that ought to have been given or

made." Based on the foregoing, we reverse the trial court's ruling granting summary judgment in favor of plaintiffs. Pursuant to our authority under Supreme Court Rule 366(a)(5), as a matter of law, we grant summary judgment in favor of defendants. *Id*. We also vacate the permanent injunction barring defendants from enforcing the ordinance and Ruling 11.

¶ 53    Reversed; permanent injunction vacated.